SAMUEL 'COMER V. GEORGE W. KNOWLES.

1. PRACTICE; *Division of Court; Affirmance of Judgment.* After this cause was argued and submitted, and before a decision was reached, the Chief Justice resigned. When brought on for decision, the other two Justices before whom the cause was tried being divided in opinion, and a reargument not being ordered, and the present Chief Justice taking no part in the decision, *held,* that the judgment should be affirmed.

2. FALSE IMPRISONMENT; *Evidence in Mitigation of Damages.* In an action to recover damages for false imprisonment, evidence offered to show that the defendant, in committing the acts complained of, acted in good faith, and without malice, is not admissible for the purpose of diminishing the general and actual damages which the plaintiff has sustained. But where the plaintiff claims exemplary damages on account of willfulness or malice on the part of the defendant, such evidence is admissible in mitigation of such damages. [Per VALENTINE, J.]

3. —————— *Pleading; Allegation of Special Damages.* False imprisonment may be committed without the slightest injury to character or reputation. Where by illegal arrest and false imprisonment, the character or reputation of the party arrested is injured, and special damages are claimed for such injury, the facts with reference thereto should be pleaded specially and in detail. [Per VALENTINE, J.]

*Error from Montgomery District Court.*

ACTION by *Knowles,* to recover damages for an alleged false imprisonment. The petition, after the caption and title, is as follows:

"The plaintiff George W. Knowles shows to court and alleges, that he is a married man, and head of family, and is a citizen of the county of Montgomery, in said state, and has been a citizen of said county for two years past; that his occupation and trade is that of a brick-mason; that on or about 8th of December 1873, and while he was peaceably pursuing his business at Rock Creek, in the Indian Territory, he was assaulted by the defendant, Samuel Comer, who then and there, with force and violence, did unlawfully, and without cause, arrest and compel the said plaintiff to leave his business, and while under arrest as aforesaid compelled the said plaintiff unlawfully and against his will to go from said Rock Creek, a great distance, to-wit, twelve miles, to

Osage Agency, also in said Indian Territory, and then and there imprisoned the plaintiff, and detained him in custody and in prison, without any reasonable or probable cause or lawful authority for a long time, to-wit, ten days, and then and there detained and prevented the said plaintiff from pursuing his business, and depriving him of his liberty, and of the comfort and society of his friends and of his family, with force and against the will of the said plaintiff, and without lawful authority, for the space of ten days as aforesaid; and plaintiff alleges that he was then and there injured in and about his business and circumstances, and in his credit and reputation. By means whereof the said plaintiff was injured, and sustained damages on account of the said unlawful arrest and imprisonment in the sum of five thousand dollars. Wherefore,'' etc.

*Comer.* answered, first, a general denial; and for a second defense, he alleged that shortly before the alleged arrest and false imprisonment of plaintiff, a pocket-book containing $125 had been stolen from one S. W. Pennell, and a lot of tools and property belonging to the government had also been stolen from the Indian Agent; that plaintiff's conduct, and speech, when said larcenies were talked about created a general suspicion that plaintiff had stolen said money and property, and that the defendant was told all the facts and circumstances upon which the suspicion of plaintiff's guilt was grounded, etc. The answer then further alleges, that—

"The said Pennell having reasonable and probable cause to suspect the plaintiff of having committed the felony aforesaid, went before one Isaac T. Gibson, a United States Indian Agent for the Osage tribe of Indians, and made affidavit charging the plaintiff with the commission of the felony aforesaid, whereupon a warrant was issued by said Gibson, directed to this defendant, whereby he was commanded to arrest the plaintiff and bring him forthwith before the said Gibson, then to answer the charge of having feloniously stolen and carried away the money and property aforesaid. Said warrant was delivered to defendant, and in obedience to the directions of said warrant, and in good faith, and without malice, and having reasonable and probable cause to suppose the plaintiff was guilty of having committed the felony aforesaid, defendant did arrest the said plaintiff and take him to the office of

said Gibson, at the Osage Indian Agency, but the said Gibson was at the time absent from the said Agency. Defendant also says that at the time he arrested the plaintiff he made a search of the person and valise of said plaintiff, and found in said valise the handsaws, files and coffin hinges stolen as aforesaid, and defendant having good and probable cause to suspicion and greatly suspecting the plaintiff of having stolen all the money and goods aforesaid, detained the said plaintiff at the Osage Indian Agency for space of five days, when he released him. Immediately upon the arrest of the plaintiff defendant communicated the facts above set forth to a United States marshal at Coffeyville, Kansas, requesting said marshal to come and take the custody of plaintiff, but said marshal not doing so within five days after the arrest of the plaintiff, he was discharged as aforesaid. And defendant says that the above facts are the same of which plaintiff complains."

Reply, a general denial. Trial at the September Term 1874. Defendant *Comer*, to maintain the issue on his part, introduced evidence tending to show that a felony had been committed at the Osage Agency, Indian Territory, and also tending to show probable cause to suspect that plaintiff had committed such felony. Defendant then offered to prove that, prior to the arrest of plaintiff, he (defendant) had, without warrant or process, made arrests of different parties suspected of criminal acts, and delivered such parties to the U. S. marshal — which testimony, on plaintiff's objection, was excluded. Defendant then offered to prove, that it was believed by many persons, and strongly suspected by many persons, residing at the Osage Indian Agency, Indian Territory, immediately prior to the arrest of the plaintiff by defendant, that plaintiff had been guilty of stealing a pocketbook belonging to S. W. Pennell, and containing $125 in money. Plaintiff objected, and the testimony was not received. Among other matters the court instructed the jury that —

"In case they should find for the plaintiff, they may, in assessing his actual damages, consider and award damages for injury to his character and reputation."

The defendant requested the following special instructions, to-wit:

"6th. The jury are instructed that, in case of the actual commission of a crime in the Indian Territory by a white person, which crime is punishable by fine and by imprisonment in the penitentiary, a private person may, without warrant, upon probable cause, and without malice, arrest a party reasonably suspected of being guilty thereof.

"7th. The party making such arrest may detain the suspected person for a reasonable time; and in case of a private person making an arrest under the above circumstances, a detention for the period of five days is not an unreasonable time, provided the party making the arrest immediately proceeds to notify the nearest United States marshal of the arrest, and requests his attendance to take charge of the prisoner, and provided also that said period of time is required to procure the presence of such marshal, he acting with diligence and promptitude.

"8th. The jury are instructed that it is not sufficient to establish the want of probable cause, that the defendant might by the use of proper deliberation, care, and inquiry, have ascertained that the crime alleged had not been committed by plaintiff."

These instructions were refused. Defendant excepted to the excluding of the evidence offered, to the instructions given, and to the refusing of his instructions. Verdict for plaintiff, assessing his damages at $150. New trial refused, and judgment on the verdict. Defendant *Comer* brings the case here.

The cause was set for hearing, and was argued and submitted at the January Term of this court 1876, while Chief Justice KINGMAN, and Associate Justices VALENTINE and BREWER were on the bench. It was under advisement, and undecided, when Chief Justice KINGMAN resigned, in December 1876.

*Nathan Cree,* for plaintiff in error.

*Wm. Dunkin,* for defendant in error.

The following order and judgment were made and entered on the 18th of January 1877:

"This cause came on for decision, and HORTON, C. J., not

sitting with the court in this case, and taking no part in its decision, the same having been submitted to the court prior to his becoming a member thereof, and Associate Justices VALENTINE and BREWER being divided in opinion as to the judgment which ought to be rendered herein — therefore it is *ordered* that the judgment of the court below be *affirmed*, with costs."

The only opinion filed is the following:

VALENTINE, J.: This was an action for "false imprisonment." Judgment was rendered in favor of the plaintiff below, and against the defendant below, and the defendant now brings the case to this court for review. The defendant below raises three questions in this court: *First*, may the defendant below, for the purpose of mitigating the damages, introduce evidence, on the trial, to show, that in committing the acts complained of, he acted in good faith, and without malice? *Second*, may the plaintiff below recover for injuries to his character and reputation, although he has not pleaded any special facts showing any pecuniary loss on account of such supposed injuries to his character and reputation? The *third* question (entry of judgment before payment of jury fee,) was substantially decided in *Topeka v. Tuttle*, (5 Kas. 312, 324,) and I do not choose to further consider the same.

I shall now consider the first two questions; and in order to consider them intelligibly, it will be necessary to consider to some extent the nature and character of the action of false imprisonment. False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone, or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison, or within walls; or that he be assaulted, or even touched. It is not necessary that there should be any injury done to the individual's person, or to his character, or reputation. Nor is it necessary that the wrongful act be committed with malice, or ill-will, or even with the slightest wrongful intention. Nor

is it necessary that the act be under color of any legal or judicial proceeding. /All that is necessary is, that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard. It will therefore be seen that the wrong constituting false imprisonment differs essentially from the wrongs constituting malicious prosecution, malicious arrest, assault, and assault-and-battery, though all of these wrongs may sometimes be united in one comprehensive and aggregated wrong. It also differs from libel and slander, and indeed from every other wrong for which an action is given. Therefore a rule of law found to be applicable to some other class of cases may not have any application whatever to an action of false imprisonment. As we have before stated, malice and willfulness are not essential elements of false imprisonment; and in this the action of false imprisonment differs from that of libel, slander, malicious prosecution, and perhaps from some others. It is true however, that malice and willfulness may belong to any particular case of false imprisonment; but when they do so belong to such particular case, they belong to it as a portion of the *special* facts of that case, for which special or exemplary damages may be awarded, and do not belong to the case as a portion of the general and essential facts of the case for which general damages may be awarded. In the present case I should think that the plaintiff below did not claim that the defendant below acted willfully or maliciously, and did not claim that he the plaintiff had any right to recover enhanced damages on account of any willfulness or malice. If I am correct in this, then the court below did not err in excluding the defendant's evidence. For all that such evidence tended to prove was, that the defendant acted honestly and in good faith in temporarily depriving the plaintiff of his liberty. Such evidence did not tend to prove that the defendant acted legally; and it could not be introduced for the purpose of diminishing the general and actual damages which the plaintiff sustained. Now, if the plaintiff had claimed enhanced damages,

29—17 KAS.

or, in other words, exemplary damages, on account of any willfulness or malice on the part of the defendant, then said evidence would have been admissible in mitigation of such damages, and the court below in that case could not rightfully have excluded the evidence. .But as the plaintiff did not claim any such damages, as we infer, nor in fact any damages except general compensatory damages, I think the court below did not err in excluding said evidence.

The next question is, whether the court below erred in instructing the jury that they might assess damages in favor of the plaintiff for injuries to his character and reputation. And this question, like the one we have just considered, also depends upon the special facts of each particular case. Where the false imprisonment is willful and malicious, the jury may consider injuries affecting the character and reputation of the plaintiff as a foundation for awarding exemplary damages. And if the present case had been that kind of case, then the said instruction could be sustained upon that ground. But in order to sustain the ruling of the court below in excluding the defendant's evidence, we have inferred from the somewhat obscure record that exemplary damages were neither claimed nor allowed in this case. Hence said instruction cannot be sustained upon any theory of this kind. Exemplary damages are never allowed in any action where the wrongful act was done innocently, in good faith, and without malice. If there could be a case of false imprisonment where the resulting injuries to the character and reputation of the plaintiff would produce some pecuniary loss, and this loss was not too remote from the wrongful act, and the special facts concerning such injuries and such loss were properly set forth in the plaintiff's petition, and were then proved, the plaintiff would unquestionably be entitled to recover for such loss. But that is not this case; for no facts showing any pecuniary loss from any injuries to character or reputation have been set forth in the plaintiff's petition in this case. Therefore, said instruction cannot be sustained upon this ground. Indeed, I think it cannot be sustained upon any ground. False imprisonment

is not like libel or slander where the injuries to the character and reputation are the gist of the action, and·where malice is a necessary ingredient of the action. In these respects it is wholly unlike those actions. \ Injuries to character and repu- \ tation are not essential ingredients of false imprisonment. \ They do not necessarily belong to the action. Indeed, they do not belong to the action at all. It is true, they are some-times found in particular cases of false imprisonment. But then they do not belong to such cases as necessary and essen-tial facts thereof. It would not be necessary to allege them or prove them in order to recover the ordinary and essential damages in such cases. Indeed, wherever injuries to charac-ter or reputation exist in a case of false imprisonment, they belong to such case merely as a portion of the incidental and special facts of that particular case. Now in libel and in slander, damages may be awarded for injuries to character and reputation, not only as exemplary damages because of the malice of the defendant essentially necessary in such ac-tions, but such damages in such cases may also be awarded as *general compensatory* damages necessarily and proximately resulting from the necessary and essential facts ·of the action. This cannot be so in false imprisonment, for injuries to char-acter and reputation are not necessary and essential facts of the action. False imprisonment may be committed without the slightest injury to character or reputation. Hence, in cases of false imprisonment, where the character or reputa-tion is injured, the facts with reference thereto should be pleaded specially, and in detail. The only manner in which they are attempted to be pleaded in the present case is as fol-lows: The false imprisonment is first stated, which shows no injury to character or reputation, and then comes the follow-ing statement, to-wit, that the said "plaintiff was then and there injured in and about his business and circumstances, and in his credit and *reputation.*" This is hardly sufficient. Even ̇in an action of libel, or slander, damages for injuries to character or reputation could hardly be recovered upon

such a scanty statement of facts. As before stated, there are three questions raised in this case — three grounds upon which a reversal of the judgment below is asked; and I think the judgment should necessarily be reversed, either upon the first, or upon the second ground. If with reference to the first ground, the ruling of the court below should be sustained, (as I think it ought to be,) then with reference to the second ground the ruling should be reversed. And *vice versa;* if with reference to the second ground the ruling of the court below should be sustained, (which I do not think it should,) then with reference to the first ground the ruling should be reversed. The two rulings cannot both be sustained. In principle they are conflicting. I think the first ruling should be sustained, and the second overruled; and therefore, because of the second ruling the judgment of the court below should be reversed. But my brethren to whom the case was submitted have differed with me, and therefore the judgment must be affirmed.

The present Chief Justice has taken no part in the case.

Judgment affirmed.