G. H. WHITMAN, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

No. 17,157.

SYLLABUS BY THE COURT.

1. RAILROADS—*Passenger on Freight Train—Willful Negligence.* A passenger on a freight train was injured while attempting to alight from the steps of the caboose while the train was moving. Before becoming a passenger he signed a release relieving the company from liability for injuries except those occasioned by willful negligence. In an action to recover damages he set up two causes of action, the first charging that his injuries were caused by the willful negligence of the conductor of the train. *Held,* there being no evidence tending to show willful or wanton negligence of the company or its employees, the demurrer to the evidence to the first cause of action should have been sustained.

2. DAMAGES—*Unlawful Detention—Proximate Damages.* The plaintiff was a man seventy-five years of age. When he fell one of the bones of his right leg was broken. After the accident the conductor came to where he was lying on the platform and informed him that the law required him to obtain from the plaintiff a written statement. Relying upon the truth of what the conductor told him, he consented to remain and make the statement, and was detained thereby from fifteen to twenty minutes before he was taken home. *Held,* that evidence of such facts justified a finding that his detention was unlawful and that the company is liable for such damages as were the natural and proximate result thereof.

Whitman v. Railway Co.

·3. ——— *Unlawful Detention—Authority of Conductor of Freight Train.* It appearing that the conductor was instructed by the railway company to obtain from injured passengers written statements, it is *held* that he was acting within the scope of his authority in detaining the plaintiff for that purpose.

4. ——— *Unlawful Restraint by Words or Acts or Both.* In such a case it is held that there was no error in giving an instruction that if the company detained the plaintiff against his will and prevented his being taken immediately to his home, such action would amount to an unlawful restraint of his personal liberty, and that all that is necessary to constitute an unlawful restraint of one's liberty is that he be restrained without any sufficient legal cause therefor, and by words or acts which he fears to disregard.

Appeal from Montgomery district court. Opinion filed June 10, 1911. Reversed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellant.

*O. L. O'Brien,* and *Walter L. McVey,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff recovered a judgment against the railway company for $400 on account of injuries received in alighting from the caboose of a freight train at the station of Cherryvale. At the time of the injury he was seventy-five years of age. When the train reached Cherryvale about dusk it did not stop at the depot but continued across Main street in order not to block that street and came to a stop about 275 feet from the depot. The plaintiff expected the train to stop at the depot, and fearing that he would be carried past his station left his seat and went upon the platform; thinking that the train was going slowly enough he attempted to get off and was thrown or fell to the ground and sustained a fracture of the leg. When he came out on the platform the conductor was standing there facing toward the front of the train

and signaling to the engineer with a lantern. After the train stopped and the conductor learned that some one had been hurt he went to where the plaintiff lay upon the pavement and informed him that he would have to obtain a statement in regard to the accident; that the law required the conductor to obtain such statement from every injured passenger. A cab was called, the plaintiff at his request was lifted into it, and, at the direction of the conductor, he was driven to where the caboose was standing. The conductor brought his papers from the caboose, got into the cab with the plaintiff and filled out the blank forms, which the plaintiff then signed. One of these was a personal-injury report required by the company's rules and the other was a report required by the Interstate Commerce Commission. Immediately after the statements were signed the plaintiff was taken to his home. When the plaintiff purchased his ticket at Independence he signed a freight-train release, authorized by a statute then in force, releasing the company from liability for loss or damage to his person while on such train, or while going to or from the same, except in case of willful negligence.

The plaintiff relied upon two causes of action. The first alleged that his injuries were caused by the gross, wanton and willful negligence of the conductor in inviting him to alight from the train by calling out the name of the station and allowing the plaintiff to place himself in a position of danger on the steps and failing to warn him of the danger, or permitting him to alight without knowing the danger. In the second cause of action the plaintiff alleged an aggravation of his sufferings caused by the conductor refusing to allow him to be removed until statements were obtained from him in regard to his injuries, and there was a prayer for actual and punitive damages by reason thereof. Both causes of action were submitted to the jury and a general verdict was returned in favor of the plaintiff.

Whitman v. Railway Co.

The defendant appeals, and assigns as error the over-ruling of the demurrer to the evidence, the giving of certain instructions to the jury and the refusal to sustain a motion for a new trial.

Upon the first cause of action the court rightly charged that the plaintiff could recover only for the willful and wanton negligence of the defendant. The conductor testified positively that he did not see the plaintiff at the time be came out on the platform and left the train, his attention being wholly absorbed in giving signals to the engineer. The plaintiff testified as follows:

"After passing the depot, being anxious to get out, I immediately arose for that purpose, and walked in a southwesterly direction to the door. I supposed the train was running slow enough to enable me to get off without danger. I did not stop at the door. I don't think I paid any attention to anybody. I took hold of the iron railing that is intended to assist passengers in boarding or leaving the car and stepped out on one step, and then I stepped out on the next, and then I found out for the first time that the train was running faster than I thought. I began then to apprehend there was danger in getting off, and I had gone so far that I could not recover myself and I went off against my will. I think that is all there is of that."

The train had not yet stopped. There is no evidence in the record that the station had been announced and nothing in the circumstances which seemed to require the conductor to be looking out for passengers at that time, especially when he was engaged in other necessary duties. There is no evidence in the record that the conductor saw the plaintiff or knew that he was at-tempting to leave the train while it was in motion. There was, therefore, no evidence to warrant a finding of willful or wanton negligence, or of any recklessness on the part of the conductor amounting to an utter disregard of consequences that would supply an intent, design or purpose to cause the injury. It is obvious, therefore, that the plaintiff was not entitled to recover

upon the first cause of action under the instructions, which are conceded to be the law.

The majority of the court is of the opinion that the second cause of action was rightly submitted to the jury. The plaintiff testified that after he fell several persons came and assisted him to arise and he told them to lay him down because it hurt him to be lifted up, and they laid him on the pavement. He also testified:

"The conductor came to me and told me he wanted a statement. He said that the law required him to get a statement from anyone that was injured traveling on the road or something to that effect. He did not say anything about the company I believe; that the law required these statements to be made in writing and I agreed to make the statement, to state the facts . . . and just at that time the cab drove up and there was some men came to put me in the cab and he said 'no, let him alone, I want him to make a statement before he leaves here.' I said, 'you put me in the cab, I can sit easier there than I can here on this pavement.' Three or four men then picked me up and put me in the cab. The conductor came to me in the cab and said that the law made it necessary for him to get the statement and then he came to the cab and looked at his papers, after he got to the cab, and said he had the wrong papers and he started back to the caboose and after he started he turned around to the cab driver and told him to drive up to the caboose, while he hunted the papers. The driver did so. I think it was fifteen or twenty minutes from the time I was injured until I was allowed to start home."

The driver of the cab testified as follows:

"The conductor came to me just as he got in my cab. He says, 'drive down to the way car, I want him to sign some papers.' I would think the way car was from 125 to 150 feet from where the old gentleman was injured. In driving to the way car I did not have to cross the railroad track. After I got to the way car the conductor went into the way car and got some papers and sat up in the cab with the old gentleman and read a little bit there, and I don't know what they said, I did not hear what they said, nor anything of

the kind. It did not take more than a minute anyway to drive over to the way car. I should think we waited at the way car four or five minutes. I am just giving my opinion as to the time. After Mr. Whitman was hurt there I would not think it was over two or three minutes before we started to the car. After the conductor had gone in there and searched for his papers and got them back, we started then and took him right home."

The plaintiff's daughter testified that he was taken with a nervous chill after reaching home, and remained so until the doctor came; that he was in much pain and did not rest at all that night.

In respect of the second cause of action, it is the contention of the plaintiff that he was unlawfully restrained of his liberty by the acts of the conductor. In the brief it is said:

"The evidence certainly shows that plaintiff.was in a condition when it was surely his right to be let alone. Conductor had no right to detain plaintiff for the purpose of getting these statements. It is true that plaintiff agreed to make the statement, and incidentally to the delay incident thereto, but he was led to agree to this because of the false and unlawful representations of conductor that the law required that he get a statement from plaintiff at that time. . . . He would not have signed them or agreed to the delay otherwise. He was made to believe by said statement that he would be violating the law if he refused to make said statement and this undoubtedly constitutes such a working upon his will, as to constitute restraint, as defined by our courts."

In support of this proposition the plaintiff relies upon *Comer v. Knowles,* 17 Kan. 436, and *Garnier v. Squires,* 62 Kan. 321. In the former case it was said:

"False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone, or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be con-

fined within a prison, or within walls; or that he be assaulted, or even touched. . . . Nor is it necessary that the wrongful act be committed with malice, or ill-will, or even with the slightest wrongful intention. Nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is, that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard." (p. 440.)

Obviously, in reliance upon the doctrine of that case, the court instructed the jury in reference to the second cause of action that:

"The defendant company had no right to detain the plaintiff against his will and prevent his being taken immediately to his home; and if the conductor did so restrain him against his will, he was invading the right of the plaintiff to his personal liberty and freedom; and if the conductor was acting within the scope of his authority in procuring such statements, then the defendant company would be liable for such damages as were the natural and proximate result of such action on the part of the conductor. In order to be guilty of unlawfully restraining the plaintiff, the wrong may be committed by words alone, or acts alone, or by both, or by merely operating on the will of an individual, or by personal violence, or by both. It is not necessary that the individual be assaulted, or even touched, nor that the wrong be committed with malice or ill-will, or the slightest wrongful intention. All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard."

This is the instruction of which the defendant complains. We find some difficulty in bringing the facts as testified to by the plaintiff within the principles which apply to cases of false arrest or imprisonment. It is true, this court has frequently held that false imprisonment may be committed by words alone or by acts alone or by both. In order to constitute the wrong it is not necessary that the individual be actually confined, or assaulted, or even that he be touched. (*Comer v.*

*Knowles,* 17 Kan. 436; *Doyle v. Boyle,* 19 Kan. 168.) The essence of the tort is that the one complaining has been wrongfully detained against his will. Ordinarily, the conduct violating the plaintiff's right must show legal or actual intent to interfere with and result in violating his right of freedom to come or go or stay when and where he wishes. (19 Cyc. 322.) While actual force is not necessary, it is generally held essential that the conduct of the person complained of must show that, if necessary, force will be used to detain, or that the person detaining him does so by some legal authority. Thus, in *Fotheringham v. Adams Express Co.,* 36 Fed. 252, it was held that shadowing by a detective before examination as to robbery which went to show that, if necessary, force would be used to detain might constitute unjustifiable deprivation of liberty. In *Garnier v. Squires,* 62 Kan. 321, actual detention without arrest but to compel forcibly the return of lost money was considered false imprisonment. There the defendant charged the plaintiff with having robbed him of $500 and held a loaded revolver to the plaintiff's head and required him to open a safe for the purpose of seeing if the money was there, and detained him for that purpose, but without intent to cause his arrest. In *Moore v. Guardner,* 16 M. & W. 594, the unlawful detention after custody in order to enforce costs, and the refusal to give an order for discharge after payment of costs, was held actionable only on proof of express malice. In *Hershey v. O'Neill,* 36 Fed. 168, it was held that to touch a person suspected of theft illegally on the shoulder and request his return to a store, which request is complied with, does not constitute an arrest. The difficulty with the present case is that there is no evidence of any personal coercion on the part of the conductor, nor is there any claim that the plaintiff apprehended that compulsory measures would be used if he did not yield.

It is said in 19 Cyc. 324:

"But there must be personal coercion of some sort exercised by defendant over plaintiff in order to subject the former to liability."

In the note cases are cited which hold that one is not obliged to incur the risk of personal violence or insult by resisting until actual violence is used, nor need there be any formal declaration of arrest. "It is sufficient, if there was reasonable ground to apprehend that compulsory measures would be used if plaintiff did not yield." (*Pike v. Hanson et al.,* 9 N. H. 491; *Ahern v. Collins,* 39 Mo. 145; *Brushaber v. Stegemann,* 22 Mich. 266.)

Besides, the authorities recognize that an express or implied submission to arrest is inconsistent with involuntary restraint. Thus, one who voluntarily remained with a constable in order to prevent the publicity of an examination it was said had no cause of complaint. (*Kirk & Sons v. Garrett,* 84 Md. 383.) Some of the authorities define false imprisonment as an unlawful physical restraint by one person of another's liberty. (*Gillingham v. Ohio River R'd Co.,* 35 W. Va. 588.) Other cases state the rule more broadly and say that it is false imprisonment when a person is prevented without lawful authority from going where he pleases, and, in *Garnier v. Squires,* 62 Kan. 321, this court held it to be, quoting from *Comer v. Knowles,* 17 Kan. 436, "a wrongful interference with the personal liberty of an individual . . . without any sufficient legal cause therefor, and by words or acts which he fears to disregard." (p. 440.) We have not been cited to any cases even analogous to the case at bar. The nearest case we have been able to find at all similar is that of *Ollet, Appellant, v. Railway Co.,* 201 Pa. St. 361, where a person was injured by having his foot crushed, and was removed to a house, and thence to a hospital against his protest. It was held that there was no actual imprisonment. The opinion, which is *per*

Whitman v. Railway Co.

*curiam,* merely affirms the lower court, where it was held that the railroad company was acting in the role of a Samaritan, and that the injuries to the plaintiff were such as required immediate attention.

In the case at bar it appears from the evidence that the rules of the company required the conductor to send in a report of all accidents, and the company furnished him with a blank for the purpose of obtaining a statement of any passenger who might be injured, with instructions that "this blank should be filled out immediately upon the happening of the accident, if the injured party is able. It not, then at the earliest time thereafter." The company also furnished the conductor a blank prepared in conformity with the interstate commerce law, to be signed by the injured passenger, which contained the following statement: "To Passengers: The law requires railway companies to report accidents to the Interstate Commerce Commission. That this law may be complied with you are requested to fill the following blank." The rules of the company authorized the conductor to obtain from any injured passenger a statement in writing, but there was no law nor any rule of the company which required a passenger to make either statement; and it will not be seriously contended that what the conductor told the plaintiff as to the law was true. It was a misrepresentation which, according to the plaintiff's evidence, induced him to consent, while suffering from his injuries and desiring needed medical attention, to remain there until what he had been falsely informed was a requirement of the law had been complied with. This amounted to an unlawful restraint of his personal liberty, and it is obvious that the same principle should apply as though he had suffered an unlawful imprisonment notwithstanding there is no evidence of such coercion by the conductor as to bring the case squarely within the rules which ordinarily govern in cases of false imprisonment. The conductor had the right to request him if able to make the statement, but

had no right to induce him to remain and make the statement by misrepresenting that the law of the state required him to make it at that time and place.

Probably the injuries sustained by the plaintiff by reason of this unlawful detention were slight, but that does not affect the principle involved. If he had sustained a severed artery which required immediate attention to prevent him from bleeding to death, and the conductor had used the same unlawful means to detain him, and procured the statement against his will, the case would only differ in degree but not in principle. The giving of the instruction complained of can not therefore be regarded as error, although it might have been worded differently in order to apply to the actual facts in evidence. All that was necessary in order for the plaintiff to recover upon the second cause of action was to show that he was unlawfully restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he feared to disregard. He testified that he agreed to remain and make the statement because he had been informed that the law required him to do so. This in connection with his age, his suffering and his helpless condition, and all the circumstances in evidence, would warrant a jury in finding that he was restrained by words and acts which he feared to disregard.

The defendant contends further that if the acts of the conductor amounted to an unlawful restraint of the plaintiff they were not within the scope of his authority. The evidence shows that the printed instructions of the conductor were to obtain a statement from the injured passenger, the instructions reading: "All conductors of trains carrying passengers must have a supply of this form on hand at all times when on duty, and as soon as possible after the occurrence of an accident the conductor will obtain from each passenger, . . . whether injured or not, a statement hereon and forward by the first train to the superintendent." The

defendant having instructed its servant and employee to obtain the statement from any injured passenger must be held to have authorized him to use what he considered necessary means to obtain it. The defendant relies upon the recent case of *Crelly v. Telephone Co.,* 84 Kan. 19, where the local manager of a telephone company was held not to have been acting in the scope of his employment when he violently assaulted and beat an operator who was about to quit the service because she refused to sign a voucher for the compensation due her. The opinion in that case quotes *Collette v. Rebori,* 107 Mo. App. 711, holding that the master is liable for the tortious acts of his servant when it is shown that the act complained of was done as a means or for the purpose of doing the work assigned by the master. The conductor was authorized to obtain from the passenger the statement, and, for the purpose of obtaining it, he represented to him that the law required the statement to be made. This is far different in principle from the act of a servant in committing an assault, which would be unlikely to bring about the accomplishment of the purpose. The representation that the law required the report to be signed by the passenger was something quite likely to induce compliance with the request and which the company might well have anticipated its servant would do. The tendency of modern decisions is to a wider interpretation of the implied authority of the servant in cases of this kind (19 Cyc. 329), especially where the relation of carrier and passenger exists (*A. T. & S. F. Rld. Co. v. Henry,* 55 Kan. 715, 723). Unquestionably, the plaintiff was a passenger at the time the conductor detained him. He was injured in alighting from the train at his destination. Before he had been removed from the company's right of way the conductor took control over him for the purpose of obtaining a statement from him as an injured passenger, and we think the relation of carrier and passenger

continued during the time the conductor detained him. We think the acts of the conductor were fairly and reasonably within the scope of his employment.

The verdict being general, with nothing to indicate how much of the damages allowed was apportioned to the first cause of action, the judgment must be reversed and the cause remanded with directions to sustain the demurrer to the evidence as to the first, and for further proceedings on the second, cause of action.

Mr. Justice BURCH and Mr. Justice PORTER dissent from the second and fourth paragraphs of the syllabus and the corresponding portions of the opinion.