No. 31,981

IRA MERRICK, *Appellee*, v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant*.

(42 P. 2d 950)

Opinion filed April 6, 1935.

*W. W. Brown,* of Parsons, and *C. A. Burnett,* of Pittsburg, for the appellant.

*Charles Stephens,* of Columbus, and *C. S. Denison,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages under the federal employers liability act.

Plaintiff was a section laborer on defendant's railroad at Nelagoney, Okla. He and the section foreman, C. T. Carson, who also served defendant as plaintiff's fellow workman, were engaged in lifting a motor car from the railway track, when, according to plaintiff's testimony, the foreman suddenly dropped his share of the load. This resulted in a severe wrenching of plaintiff's back

and strained the muscles of his abdomen so as to cause a ventral hernia.

These facts were pleaded at length. Plaintiff charged defendant with negligence in retaining in its employment a foreman who served as a section laborer who was not physically fit for such labor; that defendant knew of the foreman's incapacity for such employment; and that plaintiff was not aware of the foreman's unfitness for such heavy work.

Defendant's answer pleaded a general denial, and alleged that plaintiff's injury was caused by his foot slipping off the rail while he and the foreman were lifting the motor car from the track, and that plaintiff assumed the risks of the employment. Defendant also denied that the foreman was disabled in any way and denied that it knew of any disability of the foreman, and alleged that the latter was a careful and competent man of ordinary ability to perform the work in which he was engaged.

The case was tried before a jury. Plaintiff's evidence tended to support the material allegations of his petition. He testified that the proper and usual way to lift the car from the rails was for two men to turn their backs to one end of it, lay firm hold of it, lift it steadily and in unison, and carry it without haste halfway around and then roll it off the track. In this instance, according to plaintiff's testimony, the foreman lifted it with a jerk, hurriedly swung it around, suddenly lost his grip and dropped his hold saying, "My old game crippled hand gave way with me." All this testimony was denied, of course; and the defendant's testimony was that no such incident happened and no such remark was made by the foreman. Plaintiff's evidence also showed that he was suffering from a ventral hernia, and that it and the wrenching of his back were the result of the accident alleged. It was also shown by several expert witnesses that the hernia would not improve unless a surgical operation was undertaken, but that it would yield to such treatment; and that the operation was not attended with serious danger to life. It was also shown that the employees of the defendant, including the plaintiff, supported a railway employees' hospital out of their salaries and wages; and that its facilities and the services of its surgical experts were available to plaintiff without cost to him; but that he steadily refused to have anything to do with them. Plaintiff did testify that he had been "treated by different doctors," but there was no testimony as to the nature of the ailment

or malady for which he was so treated; and the fair inference from all the evidence was that nothing was done by these "different doctors" to correct or cure the ventral hernia.

Doctor Smith, a witness for plaintiff, testified:

"I live at Neodesha, Kan. I am a physician and surgeon, have practiced thirty-five years. . . . This was last April. . . . There was a small ventral hernia. I also examined him to-day. The rupture is still there. . . . The hernia is permanent as long as he is not treated and will become worse upon any attempted exertion or forced effort that he might have, but it can readily be corrected by medical attention, by an operation."

Doctor Benage, a witness for plaintiff, testified:

"I live at Pittsburg, Kan. I am a physician and surgeon, have been in practice seven years. Plaintiff came to me yesterday afternoon for a physical examination. He had evidence of bruising around the back and had a hernia which could have been caused by lifting.

. . . . . . . . . . . . .

"A ventral hernia can be cured by operation. It is not considered a serious operation as compared to some others, but most any major operation is considered of some seriousness. A ventral hernia is classified as a major operation because it is necessary to go through the abdominal wall. This hernia had not been taken care of."

Two surgeons of the staff of the railroad employees' hospital, called as witnesses on behalf of defendant, gave testimony to the same effect, and there was no testimony to the contrary.

The jury returned a verdict in favor of plaintiff for $5,500 and answered special questions, viz.:

"2. If you find for plaintiff, on what ground, or grounds, of negligence do you base your verdict? A. Section foreman in hurry and weak hand.

"3. If you find for plaintiff, state what items of damage you include in your verdict and the amount of each item. A. (a) lost time, $490; (b) physical pain and misery, $1,065; (c) loss of physical powers, $3,945.

. . . . . . . . . . . . .

"4. Do you find that in carrying said motor car from the tracks at the time plaintiff was injured plaintiff's foot slipped on the track rail? A. No.

"5. Do you find that section foreman at the time of plaintiff's injury had a weak and disabled hand, which at times materially weakened and reduced his power of grip, and if so, which hand? A. Yes, right hand.

"6. If you find that foreman Carson had a weak and disabled hand, which at times materially weakened and reduced his power of grip, did any officer or agent of the defendant know of such fact, and if so what officer or agent or employee or servant? A. Mr. Carson and claim agent.

"7. If plaintiff had availed himself of the hospital facilities and surgical aid, to which he was entitled as an employee of defendant, is it reasonably

certain that his physical condition would have been materially better than it is now? A. He would have been materially better."

The usual motions were filed and overruled, and judgment was entered on the verdict. Defendant presents various errors for our review, in the first of which it questions the sufficiency of the evidence to establish defendant's knowledge of the foreman's weak hand. That evidence consisted of what Foreman Carson himself said on the spur of the moment when he lost his grip on the car, and the further fact that there was on file in the office of the claim agent a record of a fight the foreman had theretofore engaged in with a discharged employee and in which he had received a wound on his right hand which left a scar. This court is inclined to hold that as Carson was none the less the defendant's foreman with the usual authority of one serving in that capacity although he himself also served as a fellow laborer, the knowledge of Carson, the foreman, was knowledge imputable to his employer, the defendant company. It was chiefly on the significance attaching to these facts that the jury made its finding No. 6, and that finding will have to stand.

Defendant's next contention is that error inhered in the instructions which treated of defendant's liability if it knowingly kept in its employment an incapacitated foreman with whom plaintiff had to serve as fellow workman. The objection to this instruction is that there was no evidence that defendant or any of its responsible officers or agents had any knowledge that the section foreman had a defective hand. That point, however, has already been disposed of in what we have said about the knowledge of the foreman being imputable to the company. One of the requested instructions which the court refused to give would have declared the law to be that knowledge of the foreman would not be knowledge of the defendant under the facts of this case. In other words, defendant's counsel would have us promulgate a special rule of law to this effect: While knowledge of a railroad foreman that one of its section laborers is physically incapacitated to work alongside other laborers is ordinarily to be regarded as knowledge to the railroad company, that rule does not apply when the foreman himself also performs the work of such a laborer; and although such laborers do not ordinarily assume the risk of injury from the incapacity of a fellow workman, unless they are informed of his incapacity, they do assume such risk when perchance their foreman

also works alongside of them as their fellow workman. In our view such a qualification of the limits of the doctrine of assumption of risk is so preposterous that we would not know where to look in the law books for something to support it. Certainly counsel for defendant cite noting that would countenance it.

Error is also based on an instruction in the law of negligence, on the ground that it enlarged the issues. Plaintiff tendered an issue by broad allegations of negligence. Defendant ignored them in its answer except by general denial. Evidence on the tendered issues was adduced at length; and while defendant did make general objections to the instructions as given, all it said on this particular point was this:

"Defendant objects and excepts to the instruction given by the court relative to the negligence of the defendant."

Certainly such an objection gave the court no suggestion as to any irrelevancy or infirmity in the instruction. (*Young v. Youngman*, 45 Kan. 65, 25 Pac. 209.) In *Clark v. Linley Motor Co.*, 126 Kan. 419, 422, 268 Pac. 860, it was said:

"The rule has frequently been announced and should be applied here, that whenever a litigant has a meritorious proposition of law which he is seriously pressing upon the attention of the trial court he should raise that point in such clear and simple language that the trial court may not misunderstand it, and if his point is so obscurely hinted at that the trial court quite excusably fails to grasp it, it will avail naught to disturb the judgment on appeal." (Citations.)

Another ground of error urged by defendant is based upon accident and surprise when plaintiff, in giving testimony in his own behalf, repudiated statements he had made touching the cause of his accident and injury. In these statements, one of which was written by plaintiff's wife and signed in his name by her, he attributed his injury to the slipping of his foot on the rail as he and the foreman were lifting the motor car off the track. In that statement there was no intimation that any incapacity on the part of the foreman had anything to do with the cause of his injury. However, such an *impasse* is not rare in a damage suit; and while this court may view such evasiveness on the part of a litigant with distrust, it merely presents a question of credence addressed to the consciences of the jury and of the trial court, and not to this court. Furthermore, however discreditable it may be for a litigant to seek to avoid a statement he may have made about the cause of his in-

jury at or near the time it happened, in this case the repudiation of the statement written by plaintiff's wife and signed in his name could not have been much of a surprise to defendant. Plaintiff's petition alleged quite a different narrative touching the cause of his accident and injury. Defendant's answer stated the cause of the accident substantially as plaintiff's wife had written it down, and plaintiff's reply denied the truth of the matters pleaded in the answer. Thus defendant was forewarned that the prior statements attributed to plaintiff touching the cause of his injuries would be repudiated.

Defendant also bases error in overruling its motion for a new trial because of newly discovered evidence which tended to show that the statements written by plaintiff's wife bore the genuine signature of plaintiff himself. That, in our view, would be a rather slender ground on which to base a reversal of the judgment.

However, we now come to a matter of more serious gravity than any of the points urged against this judgment. It relates to the amount of the verdict, the evidence on which it was based, and to the jury's special findings Nos. 3 and 7. It is the duty of one who is injured in person or property by any wrongdoing or shortcoming of another to take all reasonable means to minimize his damages. This plaintiff did nothing to correct or cure the ventral hernia he sustained in the manner alleged. He would not go to the railway employees' hospital for free treatment of that hernia. His own witnesses testified that by surgical treatment that hernia could be cured and it could not be cured otherwise. There was testimony that in refusing to go to the hospital for that purpose he said, "No, I have a family doctor in Mound Valley; I'll tell you what, the company doctors ain't worth a damn." Well, of course, this is a free country and plaintiff was not bound to go to the hospital. He was free to seek relief from his family doctor or any other competent practitioner. But neither the family doctor nor any other did anything to cure this hernia. Plaintiff's own witness, Doctor Benage, testified: "This hernia had not been taken care of." And not only did all four doctors testify that a surgical operation would cure that hernia, but the jury's special finding No. 7 clearly shows that they gave credence to this unanimous testimony of the doctors who were witnesses in the case.

It is a well-established rule of law (although there are respectable

authorities to the contrary) that where a person has been physically injured by the fault of another, which injury can be minimized or cured by a surgical operation not attended with undue suffering or serious hazard to life, and the injured person refuses to undergo such operation, he cannot recover for the consequent prolongation or aggravation of his disability which would be avoided by the needed operation. (*Brewing Co. v. Duncan*, 6 Kan. App. 178, 57 Pac. 310; *McIntosh v. Railway Co.*, 109 Kan. 246, 198 Pac. 1081; *Keown v. Young*, 129 Kan. 563, 283 Pac. 511.)

In *Strong v. Iron & Metal Co.*, 109 Kan. 117, 198 Pac. 182, a workman who had sustained an inguinal hernia through an industrial accident and refused to undergo a needed operation to effect its cure was denied compensation for future incapacity. The late Mr. Justice Marshall, speaking for this court, went thoroughly into the subject of the duty of an injured person to terminate or minimize his incapacity by submission to a surgical operation not unduly painful or hazardous to his life. True, that case arose under the workmen's compensation act, not under the federal employers' liability act nor under the general law of damages for tortious wrongdoing, but the elementary principles of law touching the duty of a litigant injured in person or property to minimize his damages by such proper course of action as would be followed by a man of ordinary prudence do not vary, in the absence of statutory exception thereto, whatever the nature of the action which the injured party seeks to maintain against his adversary.

There is another objection to the size of this verdict which addresses itself strongly to this court. In itemizing the damages allowed, the jury specified one item, "Loss of physical powers, $3,-945." The record does not reveal any substantial evidence on which this item could be predicated. Moreover, as we have seen, an allowance of damages cannot be justified on the continued loss of plaintiff's physical powers consequent upon his persistent refusal to do the thing the jury itself said would have rendered his physical powers materially better, finding No. 7. This court holds that this item in the verdict and judgment cannot stand, and the judgment in favor of plaintiff will require modification to that extent.

It follows that the cause will be remanded to the district court with instructions to reduce the judgment in favor of plaintiff from $5,500 to $1,555, and when so modified it will be affirmed.

It is so ordered.