No. 45,586

TOMMY H. THOMPSON, *Appellee*, v. GENERAL FINANCE
COMPANY, INC. and C. B. PILLSBURY, *Appellants.*

(468 P. 2d 269)

78

Opinion filed April 11, 1970.

*Jerry G. Elliott* and *Otto J. Koerner,* both of Wichita, argued the cause and were on the brief for the appellants.

*Edgar Wm. Dwire,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for malicious prosecution and false arrest. The matter was tried to a jury which returned a general verdict for the plaintiff in the amount of $10,000 actual damages and $5,837.50 punitive damages. Appeal has been duly perfected by the defendants.

The appellants assert ten points for a reversal of the judgment, many of which hinge upon a determination as to whether a full and truthful disclosure was made by the complaining witness to the county attorney's office when the criminal charge was initiated.

The facts giving rise to this action are rather complex and the evidence reflects considerable dispute.

In skeleton form with oversimplification it may be preliminarily stated the plaintiff was charged criminally with concealing mortgaged property, extradited from Colorado, bound over at preliminary hearing, and went to trial in the district court of Sedgwick County, Kansas, under criminal statutes that were repealed several months prior to the filing of the complaint. At the close of the state's evidence the plaintiff was discharged, and thereafter he filed this malicious prosecution and false arrest suit.

On the 22nd day of March, 1965, Tommy H. Thompson (plaintiff-appellee) purchased from Honest John's Furniture Store the following used items of merchandise: "2 Pc. Sect., 2 Occ. Chair, 3 Tables, 2 lamps, 1 Pole Lamp. Range O'Keefe & Merritt, 'Refrig. Kelvinator', 7 Pc. Dinette, Chest, Wringer Washer, 2 Pc. Br. Spg. & Matt., Childs Rocker." The purchase was made on a conditional sales contract which discloses a cash price of $489.80; a down payment of $50.80; a principal and unpaid balance of $439; finance charges of $145.28; a time balance of $584.28; a time sale price of $635.08; and called for thirty-six monthly payments of $16.23 commencing May 1, 1965. The reverse side of the contract shows it was assigned without recourse to General Finance Company, Inc.

C. B. Pillsbury is the president, director and a stockholder of General Finance Company, Inc. Both were named parties defendant and are the appellants herein. The petition alleged Pillsbury was acting individually and as agent for General Finance.

On the 1st day of October, 1965, Mr. Thompson moved to Denver, Colorado, and on the 7th day of October, 1965, he notified General Finance he had moved to Denver. He left all of his furniture, in-

cluding some which was not listed in the foregoing conditional sales contract, in Wichita at the home of his brother-in-law, Charles Beagle. Mrs. Beagle and Mrs. Thompson were sisters. In November, 1965, Mr. Beagle testified he sold part of the furniture, but Thompson continued to make payments on the contract until December 4, 1965, when the last payment was made on the furniture, at which time $470.67 was showing on General Finance's records as the unpaid balance.

In January, 1966, Mr. Thompson returned to Wichita from Denver for one day for a civil trial which had no connection with this matter, and he saw the furniture in question at that time in the Beagles' home, stating "Everything was there then." According to Thompson Mrs. Beagle had offered to store everything for the Thompsons until they could return for it from Denver. Thompson returned to Denver without the furniture and did not again come to Wichita from Denver until August, 1966, when his preliminary hearing was set.

On the 17th day of February, 1966, Thompson declared voluntary bankruptcy in Denver and listed General Finance as one of his creditors.

On March 5, 1966, General Finance wrote the trustee in bankruptcy to determine Thompson's intentions concerning the furniture and filed a copy of the proof of its claim in the bankruptcy court.

Thereafter General Finance received a notice of the first meeting of creditors in the plaintiff's bankruptcy proceeding, listing plaintiff's address as 2233 West 34th Avenue, Denver, and setting the creditors' meeting for March 15, 1966, at 2:00 p. m. in Denver. General Finance sent no representative to this creditors' meeting.

A letter dated March 5, 1966, from Pillsbury of General Finance to the plaintiff's bankruptcy attorney in Denver requested him to advise General Finance if the plaintiff had claimed the furniture on the General Finance contract as exempt.

On the 22nd day of March, 1966, Pillsbury wrote the trustee in bankruptcy forwarding a complete questionnaire and a certified copy of the conditional sales contract, and asked the trustee when General Finance could take possession of the collateral described.

On the 25th day of March, 1966, the trustee in bankruptcy wrote General Finance stating that Thompson's furniture was somewhere in Wichita, Kansas. The letter also advised General Finance how to go about getting leave of the court to foreclose on its collateral, and stated that if it had any questions to please feel free to make further inquiries.

By letter dated April 4, 1966, Pillsbury wrote the clerk of the bankruptcy court in Denver enclosing a check made payable to the proper payee requesting permission to foreclose.

Notice to creditors seeking leave to foreclose, dated April 11, 1966, was sent to General Finance by the Denver bankruptcy court, advising that the petition to foreclose had been referred to the trustee, and that *"unless and until you receive a formal order from this office you do not have permission to foreclose."*

The trustee's report and recommendation dated April 20, 1966, recommended the lien claimed by General Finance as valid against the trustee, and that there was no equity for the estate. It made no objection to the issuance of a foreclosure order.

The bankruptcy court issued an order granting General Finance leave to foreclose, dated April 21, 1966, reciting the conditions under which the foreclosure was to be conducted. Among them it stated:

"3. Nothing in this order contained shall be construed to authorize or permit said creditor *to assert any liability* for a personal judgment or for costs *against the bankrupt* without the further written order of this Court first had and obtained." (Emphasis added.)

James Holderman of General Finance wrote a letter to the trustee in bankruptcy dated May 5, 1966, stating in substance that General Finance had looked for the furniture covered by the conditional sales contract, but that Mr. Beagle claimed to have purchased a house full of furniture from Thompson when Thompson left for Denver in 1965; that Beagle could not recall specifically the items purchased; that he had a Kelvinator refrigerator and a sectional divan; and that General Finance could not accept these items to liquidate a $470 deficiency. The letter further recited that unless General Finance could make some arrangements with the plaintiff regarding the missing items, General Finance would file a petition objecting to the closing of the bankruptcy. In the letter General Finance requested plaintiff's current address so it could attempt to work things out with him. The letter also enclosed a copy of the conditional sales contract *and a copy of K. S. A. 58-318. A copy of this letter was also sent to Thompson's Denver attorney.*

By letter dated May 12, 1966, the trustee acknowledged General Finance's letter of May 5 and informed General Finance that the trustee represented all creditors and concluded: "Accordingly, after consulting with your own counsel you are at liberty to take whatever action you may deem advisable under the circumstances."

Holderman of General Finance, by registered letter dated May

16, 1966, addressed to Thompson in Denver, informed him that General Finance had been unable to locate the furniture in question; that the bankruptcy court had authorized General Finance to repossess the items; "and that unless the items are returned *or satisfactory payment arrangements made with the finance company* for Thompson to retain possession of the articles, General Finance would have to file a petition of objections to the closing of the bankruptcy." (Emphasis added.) A copy of this letter was sent to Thompson's Denver attorney.

By letter to General Finance, dated May 20, 1966, Thompson's Denver attorney acknowledged receipt of General Finance's letter of May 16 to Thompson and replied in the concluding two paragraphs as follows:

"I have talked to Mr. Thompson about the items which are listed on your conditional sales contract. He informs me that all of the items which you had listed were left in Wichita, Kansas, when she (sic) came to Colorado. None were removed from the State and none were sold to any other person.

"Please check again with Mr. Beagle in Wichita and I think that you will find that he has in his possession most of the items listed on your contract."

All of the foregoing documentary evidence was in the file of General Finance, including a notice of final meeting of creditors in plaintiff's bankruptcy estate dated October 23, 1966, setting the final meeting for November 14, 1966, in Denver, and was introduced as plaintiff's Exhibit No. 1 in the lower court.

On the 14th day of June, 1966, a criminal complaint was filed in Wichita, Kansas, charging Thompson with selling, concealing or disposing of mortgaged property *on the 21st day of April, 1966.*

The nature of the complaint as above indicated was stipulated in the pretrial order, but it is to be noted Thompson's petition in the instant action alleges he was charged "with concealing mortgaged property." While the answer denied this allegation and alleged that Thompson was charged with "injuring, destroying, concealing, unlawful sale, or disposal of mortgaged property," the instructions to the jury recited only that Thompson was charged "with concealing mortgaged property," and no objection was made by counsel for the appellants to such instruction. Thus, it is evident the case was submitted to the jury on the theory Thompson had concealed mortgaged property, and it was upon this basis that the jury determined the matter insofar as the record discloses.

The complaint as originally prepared by Mr. Updegraff, the

deputy county attorney in Sedgwick County, charged Thompson with violation of K. S. A. 58-318. The complaint was signed by Pillsbury but was subsequently amended charging a violation of K. S. A. 58-315b, which was prepared after Mr. Updegraff reviewed the statutes, without noting that the statutes had been repealed effective January 1, 1966. (L. 1965, ch. 342, § 12.) For some unknown reason the information on which the trial was conducted reverted back to a charge under the mortgaged section, 58-318, instead of the conditional sales section, 58-315b.

In connection with the foregoing complaint C. B. Pillsbury of General Finance filed an affidavit for extradition proceedings in order to return Thompson to Sedgwick County for trial in the criminal action. The affidavit recited the charge against Thompson; that he was a fugitive from the justice of the state of Kansas; that the application was made in good faith for the punishment of crime and not for the purpose of collecting a debt or pecuniary mulct; that the affiant would not directly or indirectly use the same for any of said purposes;

". . . and that this affiant has actual knowledge of the facts constituting the offense, which are as follows:

"That on the 21st day of April, 1966, and subsequent thereto, in the County of Sedgwick and State of Kansas, one Tommy H. Thompson did then and there unlawfully, feloniously, wilfully as vendee of personal property, to-wit: 2 pc. sectional; 2 occasional chairs, 3 tables, 2 lamps, 1 pole lamp, 1 Okeefe & Merritt range, 1 Kelvinator refrigerator, 7 pc. dinette, chest, 1 wringer washer, 2 pc. bedroom suite, springs and mattress, 1 child's rocker, sell, dispose and conceal said property sold under a conditional sales contract with the intent to defraud the vendor, General Finance Company, Inc., upon which the vendor has a valid and subsistent lien in the amount of $470.67, good and lawful money of the United States of America; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Kansas. Section 58-315b of the 1949 General Statutes of Kansas.

"Affiant further states that he knows of his own knowledge that the defendant herein, Tommy H. Thompson, was present within the County of Sedgwick and State of Kansas at the time the offense set out occurred.

. . . . . . . . . . . . . . .

"Affiant further states that all of the above and foregoing statements are true and correct and are within the personal knowledge of this affiant, except the whereabouts of the said Tommy H. Thompson and he believes the above information as to his whereabouts to be true."

On the 21st day of June, 1966, law enforcement officials appeared at Thompson's apartment in Denver, and in full view of his wife and neighbors manacled him in a set of handcuffs and leg irons.

According to Thompson's testimony this was the first indication he had that something was wrong in Kansas concerning the furniture, other than the one letter from General Finance which he handed to his attorney, who had advised General Finance that the furniture was at the Beagles.

Thompson returned to Sedgwick County where the preliminary hearing was conducted August 5, 1966, in the court of common pleas of Sedgwick County, Kansas.

He was bound over to the district court of Sedgwick County for trial on the charge of selling, disposing or concealing mortgaged property under a conditional sales contract, where, upon trial at the end of the state's evidence, Judge Howard C. Kline sustained Thompson's motion for a discharge, ruling there was not sufficient evidence to submit the case to the jury. It is alleged in Thompson's answer to the appellants' cross petition that in discharging Thompson, after the close of the state's evidence, Judge Kline said:

"The criminal court is not for the purpose of collecting or enforcing civil liability. Criminal courts are for the prosecution of a crime. This Court is of the opinion that in this particular case the finance company is using the criminal courts for the purpose of attempting to collect a civil debt, which this Court resents deeply. . . ."

In the trial of the instant action, however, the foregoing comments of Judge Kline did not get into the record as evidence.

After Thompson's acquittal he filed this action on December 23, 1966.

The appellants contend, after they were authorized by the bankruptcy court in Denver to foreclose upon their security, they exhausted all feasible methods of locating the furniture in question, sought the advice of their corporate counsel who advised they consult the county attorney's office, and that they made a full and truthful disclosure of all the facts and circumstances of their exhaustive search for the furniture in question to their corporate counsel and the county attorney.

The evidentiary facts, however, from the testimony of the various witnesses is quite conflicting.

Pillsbury testified they were unable to locate the furniture and had yet to locate it. But the evidence showed Pillsbury knew Thompson's Denver attorney had advised that the furniture was at the Beagles; and that Holderman, an employee of General Finance,

had located part of the furniture at the Beagles, which Pillsbury said was not worth the cost of replevin, and that he had not arrived at a decision as to whether or not to pick up the furniture.

Pillsbury testified he could not state of his own personal knowledge that Thompson had disposed of any of the furniture. Yet, he signed an affidavit that Thompson had on the 21st day of April, 1966, unlawfully, feloniously and wilfully sold, disposed of and concealed all of the furniture covered by the conditional sales contract with the intent to defraud General Finance, and that he had actual knowledge of the facts constituting the offense and the statements made in the affidavit were within his personal knowledge.

There is no evidence that Thompson was in Wichita, Kansas, between January and August, 1966.

Pillsbury also testified they did not pick up the remaining furniture at the Beagles because the Beagles would not surrender it voluntarily; that it would have been necessary for them to get a court order, and there really was not enough of the property left to warrant the cost of a replevin suit.

Holderman testified he did not work on the Thompson file until after General Finance had received notification from the bankruptcy court that it could foreclose on the furniture. This was the latter part of April, 1966. Thereafter, he went to the Beagles' home on three occasions, and Mrs. Beagle informed him she had picked up Thompson's furniture. He testified: "I saw these bunk beds and apparently everything they had picked up from the Thompson residence, or a number of items." Holderman testified he had never seen the furniture listed in their installment contract and could not get a good description of it. It had no serial numbers. He stated he had not talked to Thompson before the trial, and admitted mailing a letter to the trustee in bankruptcy wherein he enclosed a copy of K. S. A. 58-318 and sent carbon copies to Mr. Thompson's Denver attorney.

Holderman testified he was of the opinion General Finance could not recover the items listed in its contract and therefore wrote to the trustee in bankruptcy on May 5, 1966, informing the trustee that Beagle claimed to have purchased the furniture from Thompson and presently could account only for a Kelvinator refrigerator and a sectional couch, and a washing machine which had been stolen from his front yard.

Mr. Beagle's testimony given at the preliminary hearing was read

to the jury as part of the plaintiff's case. Beagle testified he could not recall having the chest listed on the contract, but he did have all the rest of Thompson's furniture at his house; that part of the furniture was still at his house and he sold part of it. He said he had authority to sell the furniture because it was given to his wife. In the latter part of 1965 he sold three tables, a pole lamp, the range, the seven-piece dinette and the child's rocker. The washer was sitting in front of his house and it disappeared. He testified he did not buy the furniture from the Thompsons, but told his wife to take it when the Thompsons wanted to leave it with them. He had loaned Thompson some money to go to Denver and Thompson has not paid it back. He said, "but since they gave me the furniture, I did not want the money back."

Mr. Beagle testified he did not tell Holderman he could not take the furniture and understood that Holderman was going to send a truck out to get it. He said the mattress they had from the Thompsons got rained on and rotted, and the trash man hauled it away.

Cleta Beagle's testimony given at the preliminary hearing was read to the jury, and she said the Thompsons came to their house and told her they wanted to give her the furniture. She said: "We later sold the three tables, the pole lamp, the range, dinette set and child's rocker. We still have the stove, refrigerator, springs, chair, bed and dresser." She further testified they did not give the Thompsons any money for the furniture, but they offered to buy the furniture and the Thompsons refused to sell it. She said: "So, I told them if they later needed the furniture, and I still had it, they could take it back. I did not know the furniture was mortgaged, nor did I know the Thompsons were making payments on it. I found out the furniture was mortgaged when the man came to my house a couple of months ago. I told the man he could take the furniture."

Thompson testified no creditors appeared at his first hearing in bankruptcy, and he agreed that General Finance could pick up the furniture. He said he did not dispose of any of the furniture, and if it was disposed of Chuck and Cleta Beagle disposed of it without his authority or knowledge. At the time of his preliminary hearing in August, 1966, Thompson was at the Beagles' home and testified he did not check the furniture piece by piece, but the garage was still full and the great majority was there to be readily seen by looking. He was aware the Beagles claimed some of the furniture was disposed of in November, 1965.

Pillsbury testified he consulted with his attorney, Otto J. Koerner, concerning the missing items of Thompson's furniture at the Beagles, and said he was advised to talk with the county attorney's office to get their view as to whether a criminal complaint was in order. His attorney and Holderman accompanied him to the county attorney's office at which time, he says, they gave the county attorney all the facts they had on this case. He said: "We *told* the County Attorney about the entire file and what has been displayed here as Plaintiff's Exhibit 1." (Emphasis added.)

Martin Updegraff, the deputy county attorney of Sedgwick County, authorized the complaint based upon the facts told to him, but he testified it was up to them whether or not they wanted to sign the complaint. Updegraff could not remember any of the facts given to him at that time or any of the materials placed before him. He testified the date of the offense would have to be supplied by the complaining witness.

While Pillsbury went to great pains in his testimony to say that all the information he gave to his corporate counsel and the county attorney's office was true, the evidence establishes that he knowingly signed a false affidavit.

The jury, after having been fully instructed (some instructions are challenged on appeal), returned a verdict in the plaintiff's favor in the amount of $10,000 actual damages and $5,837.50 punitive damages.

The appellants first contend the essential elements of false arrest and false imprisonment were not established as a matter of law.

On this point they argue Thompson should have proved that the appellants directed or demanded his arrest in Denver. It is said all they did was to disclose all facts known by them to the county attorney's office, and in reliance upon the recommendations of the county attorney Pillsbury signed the complaint. They contend from that moment on all matters, including the wording of the complaints themselves, were in the exclusive control of the county attorney and law enforcement officers.

The appellants say the sole basis of Thompson's false arrest claim is that he was charged and arrested under a statute which had been repealed and therefore did not exist at the time. (Citing *Holland v. Lutz*, 194 Kan. 712, 401 P. 2d 1015.)

The rule heretofore announced by this court is that one seeking to recover for false arrest or false imprisonment must prove that

he was unlawfully caused to be arrested by the defendants, and, though it is not necessary that the arrest was directly ordered by the defendants, it must appear that they either instigated it, assisted in the arrest, or by some means directed, countenanced or encouraged it. (*Hammargren v. Montgomery Ward & Co.*, 172 Kan. 484, 241 P. 2d 1192.)

Here there is evidence the appellants instigated, assisted and countenanced Thompson's arrest by not making a full and truthful disclosure of the facts to the county attorney. Pillsbury's affidavit conflicts with his testimony. The affidavit states Thompson committed the offense on the 21st day of April, 1966, in Sedgwick County, Kansas. The record is clear Thompson was not in Sedgwick County on April 21, 1966. Pillsbury further stated in the affidavit every item listed on the conditional sales contract had been disposed of, concealed or sold by Thompson, when, in fact, Pillsbury had been advised that all items had been left in Kansas by Thompson when he moved to Colorado, and Pillsbury testified he could not state of his own knowledge that Thompson disposed of any of the property. It is apparent Pillsbury, acting on behalf of General Finance, signed a false affidavit, and the evidence warranted a finding by the jury that he gave incomplete information to the county attorney which culminated in the arrest of Thompson.

*Holland v. Lutz*, supra, upon which the appellants rely, is based upon facts which have no bearing on the point here asserted.

The appellants also assert Thompson attempts to claim as a basis for false arrest an allegation that the arrest and imprisonment were malicious or without probable cause. On this premise they argue his remedy would be for malicious prosecution and not false arrest. (Citing *Holland v. Lutz*, supra.)

In an action for false arrest or false imprisonment, all that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which the one being restrained fears to disregard. It is universally held the action of false imprisonment always includes the element of an assault in the technical sense. (*Comer v. Knowles*, 17 Kan. 436; and *Perry v. Kress & Co.*, 187 Kan. 537, 358 P. 2d 665.)

The wrong constituting false arrest or false imprisonment differs essentially from the wrong constituting malicious prosecution, although both of these wrongs may be united in one comprehensive and aggregate wrong. (*Comer v. Knowles*, supra.) Malice and

wilfulness are not essential elements of false arrest or false imprisonment, and the motives of the defendant, whatever they may have been, are not material so far as a right of action is concerned and can never be material, except where something more than compensatory damages is sought. If exemplary damages are sought, proof of malice in making an arrest or imposing restraint is competent. (*Garnier v. Squires,* 62 Kan. 321, 62 Pac. 1005; and *Holland v. Lutz,* supra.) If malice and wilfulness accompany a particular case involving false arrest or false imprisonment, it is because a portion of the special facts attributable to the case warrants an award of exemplary damages, but these special facts do not belong to the case as a portion of the general and essential facts of the case for which general damages may be awarded. (*Comer v. Knowles,* supra.)

Under our code practice where a party has a cause of action containing all the elements of both malicious prosecution and false arrest or false imprisonment, as these actions were understood at common law, he is not bound as he was at the common law to prosecute for the one or for the other, but he may prosecute for his whole cause of action in one proceeding. (*Bauer v. Clay,* 8 Kan. 580.)

The point is further discussed in *Parli v. Reed,* 30 Kan. 534, 2 Pac. 635, where Brewer, J., speaking for the court, said:

". . . In one count a party may charge a wrongful imprisonment, and set out facts showing that it was procured by means of a void warrant, and through malice and without probable cause. And though the complaint and warrant are void, the plaintiff will not be estopped from showing that the prosecution was malicious and without probable cause. And this is eminently just. The defendant filed this complaint; the justice treated it as sufficient, and issued a process commanding the officer to arrest plaintiff. The officer thought the process good, and arrested him. Now, though it appears that the defendant acted maliciously, and with intent to harass and oppress plaintiff, can he avoid responsibility for the exemplary damages which his malice justly subjects him to, upon the claim that the complaint and warrant were in fact insufficient and void? Can he, when he induces and uses process to accomplish the arrest of a party, turn around and say the process is void and he is not responsible? The use of insufficient process does not make a prosecution *bona fide,* or any the less malicious. . . ." (p. 535.)

The same point is raised by the appellants regarding instructions given by the trial court. Instructions Nos. 7 and 8 followed PIK 14.20 on false arrest or false imprisonment and the comments thereunder on malice and wilfulness, which are not essential elements

of false arrest or false imprisonment. The instructions were properly given and they followed the Kansas law.

It must be conceded the appellants' corporate counsel, the county attorney's office, the presiding magistrate at the preliminary hearing, and the district judge who heard the criminal action all erred in failing to recognize the statutes pursuant to which Thompson was arrested and prosecuted had been repealed several months prior to the filing of the criminal complaint. But this is not the theory upon which the instant action was tried. It was tried on the theory that the wrongful acts and half truths given by the appellants to the deputy county attorney caused him to authorize a complaint and to procure the issuance of a warrant for Thompson's arrest. Under these circumstances the trial court submitted the cause to the jury to weigh the evidence and determine the facts.

The repeal of K. S. A. 58-318 and K. S. A. 58-315b effective on January 1, 1966 (See L. 1965, ch. 342, § 12), brought about by the enactment of the Uniform Commercial Code, was first discovered by counsel after the criminal prosecution and the discharge of Thompson. But in actions for malicious prosecution, the inquiry as to the want or existence of probable cause is limited to the facts and circumstances which were apparent at the time the prosecution was commenced. (*Messinger v. Fulton,* 173 Kan. 851, 252 P. 2d 904.)

The appellants next contend the essential elements of Thompson's malicious prosecution claim are lacking as a matter of law.

They argue at least five separate and independent defenses have been established to Thompson's malicious prosecution claim, and urge that any one of the five was sufficient to require the trial court to have ruled in their favor as a matter of law. These five defenses are: (1) Reliance upon advice of private corporate counsel; (2) reliance upon advice of the county attorney; (3) reliance upon the order of the magistrate court binding Thompson over at the preliminary hearing; (4) reliance upon the trial court's determination in the criminal action of probable cause and lack of malice as a defense; and (5) lack of probable cause as an essential element in a malicious prosecution suit.

Appellants attempt for the first time on appeal to assert the fact they received advice from private corporate counsel as a defense. This was not an issue at the trial and it cannot be asserted for the first time on appeal. The pretrial order specified:

"2. The remaining issues of fact to be determined are as follows:

"A. Was the action of the defendants in seeking and obtaining a complaint and warrant malicious?

"B. If the actions of the defendants were malicious, what damages, if any, were sustained by the plaintiff?

"C. Did the plaintiff sell, dispose of, or conceal the property, or any part thereof, listed on the conditional sales contract held by the defendants?

"D. If so, what balance is due to the defendants upon said contract?

"E. (added to pretrial order in pen) Was plaintiff falsely and wrongfully imprisoned?

"F. (added to pretrial order in pen) Was there probable cause to believe a crime was committed and a complaint to be signed?"

The pretrial order also recited:

"3. The remaining questions of law to be decided are as follows:

"A. Did the defendants have a right to rely upon the decision of the office of the County Attorney of Sedgwick County, Kansas to permit the filing of the complaint to relieve the defendants from any action alleging the defendants' actions to be malicious?"

The pretrial order further provided that the trial of the action "shall be limited to the issues contained in this Order, except by order of Court."

It is apparent the appellants' private corporate counsel and the county attorney both relied upon the facts related by the appellants. Their own file and Pillsbury's affidavit would support a finding the appellants did not relate the true facts to the corporate counsel or to the county attorney. The appellants' corporate counsel never testified or conducted an investigation. He advised the appellants only to see and consult with the county attorney.

To maintain an action for malicious prosecution the plaintiff must prove that the defendant instituted the proceeding of which complaint is made, that the defendant in so doing acted without probable cause and with malice, that the proceeding terminated in favor of the plaintiff, and that he sustained damages. The plaintiff must prove both malice and lack of probable cause, and unless both are proved, the plaintiff's claim must fail. (*Ahring v. White,* 156 Kan. 60, 64, 131 P. 2d 699; and *Walker v. Smay,* 108 Kan. 496, 196 Pac. 231.)

The foregoing is substantially the instruction taken from PIK 14.30, which was given to the jury. The jury was also instructed on probable cause in accordance with PIK 14.31, and no objection was made to these instructions.

The parties stipulated in the pretrial order the original criminal action against Thompson was terminated in his favor.

The appellants cite us to *Dick v. Truck Insurance Exchange,* 386 F. 2d 145 (10th Cir. 1967), where "reliance upon counsel" was asserted as a defense in a malicious prosecution suit, and it was held where the alleged malicious prosecution was commenced on the recommendation of counsel, such fact established probable cause as a matter of law. In that case private counsel made an independent investigation and obtained the information upon which he suggested and advised the defendant to authorize him to commence legal proceedings alleging mental illness of the plaintiff. It is readily apparent the *Dick* case has no application to the facts here presented.

In support of the appellants' defense that they relied upon the advice of the county attorney's office, they cite *Haines v. Railway Co.,* 108 Kan. 360, 195 Pac. 592, rehearing denied 108 Kan. 738, 196 Pac. 1079.

In *Haines* it was held in an action to recover damages for a malicious prosecution, a complete defense is made by proving that the complaining witness obtained all the available information concerning the commission of a crime, except such as might have been acquired from the suspected person, and truthfully placed all that information in the hands of the deputy county attorney who advised and directed that the prosecution be commenced.

The *Haines* case applies only where the complaining witness has truthfully laid before the county attorney all facts of which he has knowledge. (*Buchanan v. Insurance Co.,* 108 Kan. 520, 523, 196 Pac. 249.) As already stated there is evidence from which the jury might find that the complaining witness, Pillsbury, did not truthfully disclose facts to the county attorney. His affidavit stating that Thompson had sold, disposed and concealed every item listed in the conditional sales contract, after his own files showed where the furniture had been left in Wichita and where it could have been picked up, precludes this court from ruling that probable cause was established as a matter of law under the *Haines* decision.

There is no evidence in the record to show the deputy county attorney recommended that Pillsbury sign the complaint; the only evidence in the record is that he authorized it. Mr. Updegraff testified it was up to them if they wanted to sign it.

Had the facts related to the county attorney's office by the appel-

lants shown that some of the items of furniture were immediately recoverable, those items would not have been included in the complaint or made a part of the extradition affidavit.

On this point the appellants challenge instruction No. 14 given to the jury by the trial court. It is PIK instruction 14.33 and reads:

"The advice of the county attorney as to the institution of a criminal proceeding, sought and acted upon in good faith, is a complete defense for malicious prosecution, but this is only so when all the facts known to the defendant, *and all the facts of which he could learn by reasonable effort,* have been fully and truthfully given to such official." (Emphasis added.)

The appellants cite us to the *Haines* decision where the opinion for the court represented the view of only three members of the court. In their opinion the complaining witness was required to make a *reasonable effort* to ascertain all the facts. From this point the appellants seek to trace the rule or its variation through many Kansas cases.

It is unnecessary in this opinion to delve into the controversy asserted by the appellants to determine its ultimate resolution, because the appellants only objected to instruction No. 14 in the trial court on the ground there was no evidence given at the trial to support a finding that a full disclosure of all facts known to the prosecuting witness was not given to the county attorney's office. By failing to assert the inclusion of the "reasonable effort" doctrine set forth in the instruction in their objection, they waived their right to question the soundness of instruction No. 14.

K. S. A. 60-251 makes provision concerning instructions to the jury. Subparagraph (*b*) provides:

"(*b*) *When waived.* No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury."

The foregoing is but a codification of the prior case law. (*Clark v. Linley Motor Co.,* 126 Kan. 419, 268 Pac. 860; and *Merrick v. Missouri-K.-T. Rld. Co.,* 141 Kan. 591, 42 P. 2d 950.)

The appellants, having failed to distinctly state the matter to which they now object, and the grounds of their present objection to instruction No. 14 in the trial court, may not under the above statute assign as error the giving of instruction No. 14. It therefore became the law of the case and is binding upon the appellants. It is not clearly erroneous.

Where the facts in a malicious prosecution action are in dispute, as here, questions such as malice, probable cause, or whether the evidence discloses a legal defense to the action, must be submitted to the jury under appropriate instructions defining the law applicable to the rights of the parties under all of the evidence of record. (*Messinger v. Fulton,* 173 Kan. 851, 252 P. 2d 904.)

The record presented herein discloses sufficient evidence from which a jury could find that all the facts known to the appellants, and all facts they could have learned by reasonable effort, had not fully and truthfully been given to the county attorney's office as required under instruction No. 14, and the trial court did not err in submitting this matter to the jury.

The appellants contend binding Thompson over at the preliminary hearing is a complete defense on the ground that it establishes probable cause as a matter of law.

At a preliminary hearing the examining magistrate must find that an offense has been committed, and that there is probable cause to believe the defendants committed the crime. The question then arises, how much weight, as proof of probable cause, shall be attributed to such findings of the examining magistrate.

This point has previously been determined by an old line of cases, which the appellants concede must be overruled if they are to prevail on this point. These cases hold the finding of an examining magistrate at the preliminary hearing is only *prima facie* evidence of probable cause in an action for malicious prosecution brought by the defendant in a criminal action against the prosecuting witness. (*Ross v. Hixon,* 46 Kan. 550, 26 Pac. 955; *Messinger v. Fulton,* supra; and cases cited therein.) Since the finding of the examining magistrate is only *prima facie,* all that is necessary for the plaintiff to overcome such evidence is to overthrow it by a preponderance of the evidence.

The appellants overlook the purpose of the preliminary hearing in requesting this court to overrule the line of cases represented by *Ross v. Hixon,* supra. Under our procedure the preliminary hearing is not a critical stage in the criminal proceeding. (*State v. Pittman,* 199 Kan. 591, 595, 433 P. 2d 550.) It is not a trial in the usual and ordinary sense. The examining magistrate at a preliminary examination of an accused, who is charged with the commission of a felony, has no jurisdiction to arraign the accused or to accept a plea of guilty on the charge. (*State v. Talbert,* 195 Kan. 149,

402 P. 2d 810, cert. denied 382 U. S. 868, 15 L. Ed. 2d 107, 86 S. Ct. 143.) Furthermore, the accused is not required to present any evidence at the preliminary hearing. The preliminary hearing serves to give the person charged general information of the nature and character of the offense charged (*State v. Robertson,* 190 Kan. 771, 774, 378 P. 2d 37), and apprise the accused of the kind of evidence he will be required to meet on formal prosecution in the district court. (*King v. McKnight,* 120 Kan. 692, 695, 245 Pac. 105.) It is not necessary that there should be the same formality or the strict compliance with procedure and rules of evidence in a preliminary examination as upon the final trial of the accused. (*McIntyre v. Sands,* 128 Kan. 521, 523, 278 Pac. 761.)

In a preliminary hearing there is merely a finding to the effect that sufficient facts have been developed that justify a magistrate in sending the parties before a court competent to deal with the question of guilt or innocence. (*Ross v. Hixon,* supra.) Where the accused charged with a felony waives a preliminary hearing, the examining magistrate makes the same finding as if the preliminary hearing were fully conducted before him.

We adhere to our former decisions which hold that the binding over of an accused at a preliminary hearing is only *prima facie* evidence of probable cause, and not a complete defense to a malicious prosecution action.

The appellants contend the district court's judicial determination of probable cause and lack of malice at the trial of the criminal action is a defense as a matter of law to a malicious prosecution action.

To support this argument the appellants rely upon K. S. A. 15-516. It provides in substance that if upon the trial of a defendant in a criminal action, it appears to the satisfaction of the district court that the prosecution was commenced without probable cause, and from malicious motives, the court *shall* impose the cost of prosecution upon the complaining witness.

Judge Howard C. Kline was called as a witness in this case and testified he did not tax or assess costs against General Finance or Pillsbury as complainants or prosecutors in the criminal action. It is therefore argued by the appellants Judge Kline made a judicial determination in the nature of a negative finding of fact that the prosecution was not commenced without probable cause, and was not commenced from malicious motives.

On the record here presented it is presumptive on the part of the appellants to say Judge Kline made a negative finding by failing to assess costs under K. S. A. 15-516. In the first place, chapter 15 of the Kansas Statutes Annotated applies only to cities of the third class. (K. S. A. 15-101.) Wichita, located in Sedgwick County, Kansas, where Thompson's criminal action was heard, has a population exceeding 15,000 and is a city of the first class. (K. S. A. 1968 Supp. [now 1969 Supp.] 13-101.) In the second place, had counsel for Thompson been successful in getting into evidence the reasons given by Judge Kline when he discharged Thompson at the close of the state's evidence in the criminal proceeding, substantiating the allegation made in Thompson's pleading, it may have disclosed a positive finding of lack of probable cause and malicious motives.

Basically, the appellants are attributing a negative finding to the action of Judge Kline when he discharged Thompson at the close of the state's evidence in the criminal proceeding for the failure of Judge Kline to follow the Kansas statutes. The applicable statute which the appellants should have cited to this court and to Judge Kline is K. S. A. 62-1902. In substance it provides the same as 15-516, *supra*, but it applies to the prosecution of Thompson herein. Thus, the appellants' counsel, who were wrapped up in this case for more than three years when their brief was filed, have in their brief, by mistake, cited this court to a statute which is inapplicable. Under the circumstances we cannot attribute a negative finding to the action of Judge Kline. There is no indication he was ever cited to the proper statute.

A query may be posed. What would happen had Judge Kline been cited to the proper statute and assessed costs against the complaining witness? Would this establish a positive finding by a judicial officer after hearing the matter that the prosecution was commenced without probable cause and from malicious motives, and thereby preclude the defendants in the malicious prosecution action from defending on these issues? We think not.

The issues to be determined in a malicious prosecution action are framed by the pleadings and the proceedings in that action, where the parties concerned are all represented by independent counsel and the issues are resolved on the basis of the evidence and the law applicable to such action.

The appellants next contend whether a given set of facts consti-

tutes probable cause for a criminal prosecution is one of law to be determined by the trial court and is not a question for the jury. (Citing, *Buchanan v. Insurance Co.,* 108 Kan. 520, 196 Pac. 249.)

In *Buchanan* the trial court left the question of what facts constituted probable cause entirely to the determination of the jury, and this was said to be error. In the opinion the court said:

". . . Whether certain facts sought to be established exist, are matters of fact for a jury, but whether the facts do or do not constitute probable cause for insituting a prosecution is not a jury question, but strictly one of law for the decision of the court. . . ." (pp. 524, 525.)

Under this point the appellants also challenge the probable cause instruction given to the jury.

If, as the appellants contend, the trial court erred in failing to determine the issue of probable cause as a matter of law, it was because the trial court was led astray. The pretrial order, prepared by counsel for the appellants, did not list the probable cause issue as a question of law to be determined by the trial court. In the pretrial order it was specifically set forth as an issue of fact to be determined at the trial, and no objection was made to the giving of instruction No. 11 defining probable cause in accordance with PIK 14.31.

In a malicious prosecution action the determination of probable cause is only a question of law for the determination of the court when the facts are not in dispute, but, if the facts tending to establish the existence or want of existence of probable cause are in dispute, then it becomes the duty of the trial court to submit the question to the jury. (*Barnes v. Danner,* 169 Kan. 32, 216 P. 2d 804; and *Messinger v. Fulton,* 173 Kan. 851, 856, 252 P. 2d 904.)

The appellants pursue the point further, citing *Rowe v. Glen Elder State Bank,* 126 Kan. 291, 267 Pac. 998, where the court said:

". . . Where the facts as to probable cause are in dispute, it is the function of the jury to find what facts exist, but it is the function of the court to determine and advise the jury what facts if proven will or will not constitute probable cause. This the court failed to do. A general instruction was given on the subject of probable cause, which left the jury to determine not only the existence of the facts but also whether the facts proven or found constituted probable cause. Under the authorities the latter is a question of law for the court to decide. . . ." (pp. 292, 293.)

In *Glen Elder* the trial court failed upon request to instruct the jury as to the particular facts found to exist which would or would

not constitute probable cause. That was material to the court's decision.

The record herein fails to disclose the appellants made a request for instructions to the jury as to the particular facts found to exist which would or would not constitute probable cause. Upon all the circumstances presented by the record herein, they cannot now be heard to complain by raising this point for the first time on appeal.

The conflicting facts heretofore noted as to the location of the furniture, whether it had been sold, concealed or disposed of by Thompson, and conflicting testimony as to the acts and conversations of various witnesses under the circumstances here presented warranted the trial court in placing the probable cause issue before the jury by instructions Nos. 11 and 12 (PIK 14.31 and 14.32), to which the appellants made no objections.

The appellants contend in the case at bar the plaintiff failed to establish malice as a matter of law; conversely, they argue, the lack of malice was established and the trial court should have so ruled.

Malice may be inferred where a person acts without probable cause in instituting a criminal proceeding against another. That is to say, want of probable cause may be evidence of malice. (*Walker v. Smay*, 108 Kan. 496, 196 Pac. 231.)

Without objection by the appellants the jury was instructed on want of probable cause and malice by instruction No. 12. (PIK 14.32.) This instruction advised the jury it could infer that a person who acted without probable cause acted with malice.

To support this point the appellants rely upon the proposition that probable cause defenses were established as a matter of law. For the reasons heretofore stated their position, as to probable cause defenses on which they rely, has been demonstrated to be erroneous.

The appellants contend there is no evidence at bar that they commenced any prosecution with a malicious motive or with a wanton disregard of Thompson's rights. In support of this proposition they argue Pillsbury signed complaints authorized and issued by the county attorney's office only and solely on reliance of the findings of his private corporate attorney and upon the recommendations of the county attorney's office.

As previously stated, the appellants' private corporate counsel only advised the appellants to consult with the county attorney, and the county attorney merely authorized a complaint to issue.

No one had actually recommended that Pillsbury sign a complaint.

Without reiterating the conflicting testimony and evidence, the signing of a false affidavit by Pillsbury was sufficient for the jury to find there was ill will against Thompson on the part of the appellants.

Furthermore, before General Finance consulted its private corporate counsel, Holderman, an employee of General Finance, sent a letter dated May 5, 1966, to the trustee in bankruptcy enclosing a copy of K. S. A. 58-318, copies of which were sent to Thompson's Denver attorney. It tends to show the appellants knew what course of action they intended to pursue, and the nature of such action, without regard for the rights of Thompson, all before they consulted private corporate counsel or the county attorney.

A registered letter sent by Holderman of General Finance on May 16, 1966, addressed to Thompson in Denver, informed him that unless the items of furniture were returned or satisfactory payment arrangements made with the finance company for Thompson to retain possession of the furniture, General Finance would file a petition of objection to the closing of the bankruptcy. The jury was entitled to view this letter as an attempt by General Finance to collect money from Thompson contrary to orders given by the bankruptcy court, dated April 21, 1966, wherein General Finance was granted leave to foreclose.

The letters of General Finance in its file admitted as plaintiff's Exhibit No. 1 disclosed its knowledge of other remedies available, and coupled with the other evidence, warranted the jury in weighing the evidence to find that no just cause or excuse was indicated for pursuit of the criminal proceedings against Thompson.

Here the facts were in dispute, and the question of malice was properly submitted to the jury. (*Messinger v. Fulton,* supra.)

It is apparent the jury found there was malice because it returned an award for punitive damages, having been properly instructed relative thereto.

The appellants contend that if each and every one of the defenses heretofore discussed is not a complete and absolute defense in and of itself, then at least all of these defenses in combination must be ruled to establish a single, absolute defense to the suit at bar as a matter of law. Based upon what has heretofore been said this point has no merit.

The appellants' contention that the trial court committed re-

versible error by the manner in which it instructed the jury has heretofore been treated by considering the various instructions challenged by the appellants on appeal, which were given to the jury.

Under this point the appellants also assert the trial court erred in failing to instruct at all on the defense of reliance on private counsel. As heretofore stated this point has been raised for the first time on appeal. No request was made by the appellants for an instruction on this point in the trial court, and the issue was not covered in the pretrial order.

The appellants contend the trial court erred in refusing to submit special questions to the jury as requested by the appellants in writing.

The appellants requested in writing that the trial court submit eighteen special questions to the jury pursuant to K. S. A. 60-249 (*b*). They recognize that this section of the statute grants to the trial court discretionary powers in the area of special questions. (*Thompson v. Norman,* 198 Kan. 436, 424 P. 2d 593.) But they argue a malicious prosecution and false arrest case peculiarly requires special findings on the part of the jury. They argue:

"There is no way at bar for anyone to determine whether the jury found in plaintiff's favor on the false arrest claim or on the malicious prosecution claim, or on both. Nor, assuming the jury found for plaintiff on malicious prosecution, is there any way anyone can ascertain on what concrete facts the jury rested its decision as to the presence or absence of probable cause. It cannot be questioned that such was an important phase of the trial below. . . ."

On the instructions given it is clear the jury found the appellants guilty of malicious prosecution because they awarded punitive damages. Answers given by the jury to special questions requested on probable cause would not have produced concrete facts upon which the jury based its finding of probable cause. One special question requested simply asked the jury whether it found from the evidence that the defendants had probable cause to believe that an offense had been committed by the plaintiff. If a negative answer was given the jury was asked *to explain.* A similar question was posed on lack of probable cause and, if the jury answered in the affirmative, the jury was asked to explain. If these special questions had been submitted, the jury under the instructions given would probably have explained its answer in language similar to the instruction on probable cause.

The requested special questions indicate the appellants still re-

garded the general probable cause issue as a fact question for submission to the jury, when their request was submitted to the trial court.

An examination of the special questions requested discloses that some were confusing and inappropriate to the issues in the case. Others sought to examine the jury relative to issues that were not covered by the pretrial order, and some purport to be duplications.

In *Thompson v. Norman,* supra, this court held 60-249 (*b*), *supra,* to be substantially the same as Federal Rule No. 49 (*b*) and discretionary even though the questions relate to issues of fact raised by the pleadings or evidence.

Under the circumstances presented by this record, we cannot say the trial court abused the exercise of its power of discretion in refusing to submit the special questions requested to the jury.

The appellants next contend offering into evidence plaintiff's Exhibits Nos. 3 and 4, a set of leg irons and a set of handcuffs, which were not listed in the pretrial order, had an inflammatory effect on the jury which could not be corrected by sustaining the appellants' objections, and constituted reversible error.

These exhibits were offered in evidence on the ground they were similar to the handcuffs and leg irons used when Thompson was arrested in Denver by law enforcement officials. Without objection counsel for the appellants permitted Thompson, upon examination as a witness, to identify the leg irons as the type they put on him at the time of his arrest, and to testify that they required him to walk to the police car with them on. He was also permitted to identify the handcuffs as the type they used to handcuff him in Denver. He was then asked whether they took him downtown that way, and he answered in the affirmative. The offer of the exhibits in evidence followed, and counsel for the appellants objected on the ground: "There is no foundation laid that these are the ones. There is no way to cross-examine." He further argued it was only an attempt to inflame the jury, that they were inadmissible in evidence, and that there was no showing defendants had any control over what was done in Denver. The trial court sustained the objection and nothing further appears in the record concerning the matter.

The appellants made no motion for a mistrial before the jury retired to deliberate, and have failed to make it affirmatively appear from the record presented herein they were substantially prejudiced by the offer of the exhibits. (K. S. A. 60-261; and K. S. A. 60-2105.)

Having made no effort to rebut or discredit this testimony, the appellants were required to accept the evidence that Thompson was handcuffed and manacled in leg irons. If the jury was inflamed, it was by the testimony of Thompson which was never challenged, and not by the offer of the exhibits that were denied admission in evidence.

The only other point asserted by the appellants—that the trial court erred in refusing to permit the appellants to present any evidence on their cross petition, and in ruling their cross petition to be abandoned—has been abandoned by the appellants on appeal.

Finding no point asserted by the appellants on appeal sufficient to warrant a reversal of the judgment, the judgment of the lower court is affirmed.