No. 35,744

EDWARD L. RYAN, *Appellee*, v. FRANCIS RYAN and JOSEPH RYAN, doing business as RYAN BROTHERS, *Appellants*.

(133 P. 2d 119)

Opinion filed January 23, 1943.

*H. S. Roberts,* of Kansas City, argued the cause, and *Joseph A. Lynch,* of Kansas City, was on the briefs for the appellants.

*Melvin E. Buck,* of Kansas City, argued the cause for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover wages. At the trial defendants moved for judgment on the pleadings and the opening statement of plaintiff, the motion being denied. Although not clearly disclosed by the abstract, it appears from the copy of journal entry attached to the notice of appeal certified to this court that the trial proceeded and resulted in a judgment for the plaintiff. Thereafter the defendants appealed to this court solely from the ruling on the motion. The appellee raises no question as to the ruling being appealable, and on the assumption that a motion for

judgment is tantamount to a demurrer, the appeal will be considered. (*Smith v. Lundy*, 103 Kan. 207, 173 Pac. 275; *Dixon v. Fluker*, 155 Kan. 399, 125 P. 2d 364.)

Plaintiff's petition alleged that defendants were copartners engaged in selling coal and building materials at retail in Kansas City, Kan., and that on October 16, 1937, they entered into a written contract with the International Brotherhood of Teamsters, Chauffeurs, Stablemen, and Helpers, local union No. 498, Kansas City, Kan., hereinafter called the union, the contract setting out working conditions and wages of pay for certain employees, which defendants agreed to pay, a copy of the contract being attached to and made part of the petition; that immediately upon said contract's being signed plaintiff joined and became a member of the union and was entitled to the benefits granted an employee thereunder. Plaintiff further alleged that for many years prior to the signing of the contract, and continuously thereafter until February 20, 1940, he was employed by the defendants as a truck driver, the defendants owning the trucks. It is not necessary to set out in detail the allegations with respect to the amounts due under the schedules of the contract and the balances alleged to be due, amounting to $312.59. Plaintiff alleged demand for payment and defendants' refusal to pay.

The contract is summarized and quoted as follows: It was made between the defendants and International Brotherhood of Teamsters, Chauffeurs, Stablemen, and Helpers, local No. 498, affiliated with the American Federation of Labor. Section 1 provided that forty-eight hours should constitute a week's work for drivers of company-owned trucks. Section 2 made provision for time-and-a-half pay on Sundays and certain holidays and for exception in certain emergencies. Section 3 provided there should be no discrimination against any man acting as steward of the union and that there should be no organizing activity on company premises or during working hours. Section 4 set forth, under five divisions, scales of pay for specified work. Sections 5, 6 and 7 need not be noticed. Sections 8 to 15, inclusive, read as follows:

"Section 8. It is understood that only members of the union or those eligible for membership be employed by the dealer. It is further understood that when a nonmember of the union is employed and his employment comes under the jurisdiction of the union, that he shall make application for membership within 7 days and that 50¢ shall be deducted each day until the expiration of seven days.

"Section 9. Seniority rights shall prevail at all times and no employee shall lose his seniority rights on account of sickness or disability.

"Section 10. Any man drawing a higher rate of pay shall not suffer any reduction in wage for work performed in the same classification.

"Section 11. The union agrees, should charges of dishonesty or drinking while on duty be preferred against any of its members and such charges be proven the said member shall be fined or suspended; any employee found drunk, while on duty, or dishonest, may be discharged without advance notice.

"Section 12. The employer and the union agree that they, or any member thereof, will not compel each other to enter into any written or verbal agreement which may conflict with the terms contained in this agreement.

"Section 13. It will not be considered a violation of this agreement on the part of any driver to refuse to deliver goods to parties in any lockout or bona fide strike.

"Section 14. Trucks shall work in rotation first in first out, any truck leaving yard for any cause whatsoever must upon returning take last place on list. The yard steward and the truck dispatcher must work in harmony to see that there is no deviation in this routine.

"Section 15. No driver shall be compelled to unload any cars of coal or carry in any coal unless he so chooses."

Section 16 provided for settlement of differences not covered by the agreement.

We notice defendants' amended answer and cross petition only to state that execution of the contract was admitted, and that it was denied plaintiff joined and became a member of the union and was entitled to any benefits granted an employee under the contract. Plaintiff's employment by defendants was admitted. Other denials of the answer are not material. Plaintiff's reply denied all new matter in the answer.

At the conclusion of plaintiff's opening statement defendants moved for judgment on the statement and on the pleadings. Colloquy between court and counsel developed that defendants' ground was that there was "nothing here on which the plaintiff could make out a cause of action, whatever evidence he can bring." As has been stated, the trial court denied the motion.

In their brief, appellants treat the opening statement and the pleadings as a unit. We need not set out the opening statement. We have studied it carefully and it contains no statement or admission which precludes a recovery by plaintiff and compels a judgment for defendants (*Caylor v. Casto*, 137 Kan. 816, 22 P. 2d 417; *Speer v. Shipley*, 149 Kan. 15, 17, 85 P. 2d 999) unless because it recited the allegations of the petition, and the petition did not state a cause of action. For the purposes of the motion the allegations of the peti-

tion must be taken as true, and we are not concerned with denials, defenses or counterclaims set up in the answer and cross petition. (*Hirt v. Bucklin State Bank,* 153 Kan. 194, syl. ¶ 3, 109 P. 2d 171.) Such a motion invokes the judgment of the trial court on questions of law as applied to the pleaded and conceded facts, and a judgment thereon is equivalent to a ruling on a demurrer. (*Smith v. Lundy,* 103 Kan. 207, 173 Pac. 275.)

The substance of appellants' contentions the trial. court erred is that the pleadings disclose plaintiff was not privy to the contract between the union and the defendants; that the contract was between the union and the defendants only and was not made for the benefit of plaintiff and he had no right to sue thereon; and that there was no consideration for 'the contract. In some of the cases cited, the principal question was, that of mutuality.

Even a brief examination of the subject will disclose that collective bargaining agreements have been of diverse types and to fit varying circumstances, although many of them have been for the general purpose of fixing hours of labor, rates of pay, working conditions, rights of seniority, and for settlement of disputes arising in connection therewith. There is a considerable body of legal literature and of court decisions bearing on various phases of the matter. Insofar as a right to sue· is concerned, decisions may be found that under a contract between an unincorporated union and an employer, the union not being a legal entity could not maintain an action, and others that such a contract, absent specific provision, did not create a contract between the individual members of the union and the employer, and therefore an employee could not maintain an action against his employer. It is also to be borne in mind that some ·of the decisions are in so-called suits in equity, while others are in actions at law. Another variation may be noted in that some of the suits or actions were for the purpose of preserving seniority rights, right of employment in the future, etc., while others pertained to completed matters, or put another way, some dealt with executory and some with executed contracts. The questions involved in the case at bar do not require nor do limits of space permit the citation and analysis of cases treating all of the above matters. The legal aspects of the above may be found in 31 Am. Jur. (Labor, § 96 *et seq.*), p. 872 *et seq.,* and also under the title "Trade Unions" in 63 C. J. 651 *et seq.*

On the question of the right of an employee to maintain an action

on a contract such as is now before us, the course of the decisions is well summarized in 31 Am. Jur., § 119, p. 880, where it is said:

"It was pointed out in one of the earliest cases involving rights under collective agreements (*Hudson v. Cincinnati N. O. & T. P. R. Co.,* infra) that the ordinary function of a labor union is to induce employers to establish usages with respect to wages and working conditions which are fair, reasonable, and humane, leaving to each of its members to determine for itself whether and for what time he will contract with reference to such usages; and it was therefore decided that a labor union, in contracting with an employer with respect to wages and conditions of service for a specified period of time, did not establish contracts between its individual members and the employer, a breach of which would sustain actions by the individuals. Under the doctrine of this case, an individual member of a union may not sue upon the collective agreement in the absence of ratification thereof by him as an individual. This view has been enunciated in some later cases.

"There is a trend of jurisprudence away from this rule, and the right of individual members to enforce the agreement is sustained under a variety of theories. For example, some authorities have recognized the right of individual employees to sue as beneficiaries under a contract made expressly for their benefit, and also upon the theory that the collective agreement was made part of their individual contract. It has been held, for example, that a collective agreement, being a general offer, becomes a binding contract when it is adopted into and made a part of the individual contract of each employee, with the result that a breach of its terms will give rise to a cause of action by either party. Indeed, it has been held broadly that an action may be brought by an employee who is a member of the union which negotiated a collective agreement, to assert his rights under such agreement. Further, there is authority to the effect that an employee, not a member of a union and not eligible to become such, whose rights have been defined by the collective agreement, may sue thereon as a contract made expressly for his benefit. In any case, the employee will not in his action be permitted to champion the rights of the union as a whole."

Also, see *Rentschler v. Missouri P. R. Co.,* 126 Neb. 493, 253 N. W. 694, 95 A. L. R. 1, and 63 C. J., p. 671, note 54, the annotation on "Collective Labor Agreements," 95 A. L. R. 10, and many subsequent decisions noted in A. L. R. Blue Book of Supplemental Decisions.

In support of their contention that plaintiff is not privy to the contract pleaded and may not maintain the action, appellants direct our attention to *Swart v. Huston,* 154 Kan. 182, 117 P. 2d 576. We note that was a case, not to collect wages earned and due at the time employment ceased, but to collect wages alleged to be due between the time employment ceased and the time the action was filed. In that case the contract between the union and the employer was analyzed and it was held that mutual and reciprocal obligations did

not exist, the essentials of an enforceable contract were wanting and an action for breach of the contract could not be maintained. However, in that case it was recognized that enforceable contracts for the benefit of third parties could be made, it being said:

"Nothing is more common than enforceable contracts made for the benefit of a third party, and it would appear to be quite feasible for the collective bargain between a labor union and an employer to include details defining the mutual or reciprocal obligations of the employee and employer toward each other, with some provision to show that the employee had agreed to be personally bound by its terms. (31 Am. Jur. 880, 881.) Nothing of that kind is involved in the collective bargain submitted for our consideration in this action." (l. c. 186.)

Appellants have also directed our attention to a number of cases from other jurisdictions and have quoted excerpts therefrom favorable to their contentions. Each of the cases involved rights under union contracts but none involved executed contracts. In *Hudson v. Cincinnati, N. O. & T. P. R. Co.*, 152 Ky. 711, 154 S. W. 47, decided in 1913, it appears plaintiff had been discharged. He brought action on the ground his discharge was wrongful under the contract and sought to recover wages he would have received between date of his discharge and the termination of the union contract. In *West v. Railroad Co. et al*, 103 W. Va. 417, 137 S. E. 654, decided in 1927, plaintiff had been laid off. He alleged his rights of seniority under a union contract were violated; that but for loss of seniority he would have been employed and he sued to recover wages he would have earned had he been reëmployed when he sought reinstatement. In *Panhandle and S. F. Ry. Co. v. Wilson*, (Tex. Civ. App.) 55 S. W. 2d 216, decided in 1932, plaintiff alleged unjust discharge in that his seniority should have been retained under a union contract, and he sought to recover wages after the discharge. In *Wilson v. Airline Coal Co.*, 215 Ia. 855, 246 N. W. 753, decided in 1933, the action was in equity by the union to enjoin alleged violation of a union contract with an employer, the exact relief sought not being disclosed by the opinion. It was held a voluntary unincorporated association could neither sue nor be sued, and that the contract under consideration lacked consideration and mutuality. In *Kessell v. Great Northern Ry. Co.*, 51 F. 2d 304, decided in 1931, the action was one for damages for alleged wrongful discharge under a union contract. Although excerpts quoted from the above decisions tend to support appellants' contentions, we think the type of action and the relief sought show they are not controlling here.

Appellee directs our attention to the case of *Gulla v. Barton*, 164 App. Div. 293, 149 N. Y. S. 952, decided in 1914, which involved a state of facts very similar to those of the case at bar. Those facts are sufficiently set out in the syllabus, which reads:

"1. An employer, to prevent strikes and in consideration of the right to use the union name and label, entered into a contract with a labor union by which only union men were to be employed and all employees were to be paid $18 a week. Plaintiff, a member of the union, without knowledge of such contract, worked for the employer for a considerable period for $9 a week, the wages agreed upon between him and the employer, but upon learning of such contract informed the employer that he would seek to recover his back pay at law, and thereafter he was paid the union wages. *Held*, that plaintiff, having been a party intended to be benefited by the agreement, and having been connected with the consideration therefor by reason of the fees and dues paid by him as a member of the union, was entitled to enforce the contract, and to recover the difference between the wages paid him and the union wages.

"2. Plaintiff did not, by entering into an independent agreement, express or implied, with his employer, or otherwise, waive the benefit of the contract between the employer and the union."

The above case has been followed in New York as recently as *McNeill v. Hacker*, 21 N. Y. S. 2d 432, decided in 1940.

An examination of the contract presently involved shows generally that hours of labor and scales of pay were fixed. In addition, however, there were provisions applicable to the individual members of the union as distinct from the union as a unit. Section 8 of the contract provided employment should be limited to members of the union and that when a nonmember was employed he should make application for membership. Section 10 preserved to any member his right not to be subjected to any reduction in pay, and section 12 contained a reciprocal provision that the employer and the union or any member thereof could not compel each other to enter into any agreement in conflict with the contract. It would seem that these provisions were inserted in the contract for the individual benefit of the members of the union. There is nothing about the contract to show the union is incorporated—the whole inference from the petition, the contract and the opening statement is that it was a voluntary association. This was known to the defendants when the agreement was made, and it must be assumed they knew that under such circumstance the union could maintain no action for the benefit of an individual member. (*Grolier Society v. Foster*, 110 Kan. 306, 203 Pac. 920; *Wilson v. Airline Coal Co.*, supra.) If it be as-

sumed that defendants believed that an individual member of the union could not maintain any action on the contract, then it must be further assumed they knew the contract was a futile thing and gave neither the union nor any member any right enforceable in any manner except· possibly by a strike—a thing the contract sought to avoid.

We are of opinion the provisions of the contract were such that it was made for the individual members of the union. Plaintiff immediately upon its execution joined the union and became a member thereof and continued in defendants' employ, and by so doing he effectively bound himself to accept the wage scale so long as he remained in the employment.

Without repeating the provisions of the contract, we think the provisions of the contract were reciprocal to the extent that the agreements of the parties one with the other constituted a sufficient consideration for the contract. Appellants do not specifically rely on lack of mutuality in the contract. It is noted, however, that it has previously been pointed out that the contract, insofar as plaintiff is concerned, has been executed. In such circumstance, lack of mutuality, if it ever existed, was not a defense. (*Nelson v. Schippel*, 143 Kan. 546, 551, 56 P. 2d 469, and cases cited.)

We conclude the trial court did not err in denying appellants' motion for judgment on the pleadings and opening statement, and its judgment is affirmed.

PARKER, J., not participating.

HARVEY, J., dissents from second paragraph of the syllabus and the corresponding portion of the opinion.