No. 46,452

LYMAN MUNSELL, *Appellee*, v. IDEAL FOOD STORES, A DIVISION OF ALLIED SUPERMARKETS, INC., *Appellant*. IDEAL FOOD STORIES, A DIVISION OF ALLIED SUPERMARKETS, INC., FRED HARRISION and NATIONAL BUSINESS SECURITY, (Defendants.)

(494 P. 2d 1063)

Opinion filed March 4, 1972.

*Stanley E. Antrim* and *Thomas F. Richardson,* of Light, Yoxall and Antrim, of Liberal, both argued the cause and were on the brief for the appellant.

*Harold K. Greenleaf, Jr.,* of Smith and Greenleaf, of Liberal, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the appellee Lyman Munsell to recover damages from the appellant Ideal Food Stores arising out of an incident which occurred on November 12, 1968. Munsell recovered a judgment against Ideal in the total amount of $30,012.45 after trial by jury. Certain facts in this case are not in dispute. Ideal Food Stores, a Division of Allied Supermarkets, Inc., is engaged in the wholesale grocery business and it has an office at Liberal, Kansas. Munsell was employed by Ideal as a truck driver from 1956 until he was discharged on November 12, 1968. On that date at around 10 o'clock a. m. Munsell was requested by Ideal's superintendent to return to the company offices at around 1 o'clock in the afternoon for a talk. Munsell returned between 1 and 1:30 that afternoon and he was taken by the superintendent to the office of Steve Phillips, Director of Operations for Ideal Food Stores. There Munsell was introduced to Fred Harrison who was area manager of National Business Security Co., a firm engaged in the business of furnishing shopping security services to grocery companies. Munsell was interviewed by Harrison in the presence of his boss, Steve Phillips. There is a sharp difference of opinion as to what happened during the interview which terminated at about 5 or 5:30 that afternoon. At this point it is sufficient to say that at the close of the interview Harrison, the interrogator, had obtained from Munsell a four-page "confession" written in Munsell's own handwriting and signed by Munsell on each page. This statement, written on the stationery of Ideal Food Stores and witnessed by Steve Phillips and Fred Harrison, declared:

"11-12-68

"Dear Steave Phillips.

"I Lyman Munsell while employed. at the above location have been guilty

padding my operatorr time slip and trip report on actual time taken on re-fueling Hook up and drops loading and unloading.

"for an average of one to one and half hours a week during week of 10-25-68 at the Globe Store Lubbock Texas I falsified my trip report two hours for unloading when in fact I was not present when truck was unloaded L. N. Globe Persenal unloaded the truck.

"during ten years employment with this company I have falisified my time report and trip report for an estimeted 780 hours. (Seven hundred and eighty hours) I recived pay for these hours and at time of falsification I knew it to be wrong.

"I would estimate the total amount of money stolen by me through this method to be one thousand and sixty dollars ($1560.00). during this period I have written many hot checks, knowing at the time I wrote them I did not have money in the Bank to cover them.

"At this date I have four Hot Checks outstanding at the following location Apco Service Station, Woodward Okla $55.00 dated 10-15-68. an Ideal Foods Service stop. Big top cafe Bllco Okla $5.00 dated, 3-19-68, C. N. Anthonys Perryton Texas. $30.00 date unknown Skellys truck stop Woodward Okla $10.00.

"I write this letter of my own free will and acord.

"I have not received threats or promises from anyone.

"I fully understand the contents of this letter and sighn it freely and voluntarily knowing I do not have to do so without legal counsal and advice and that it is correct and true to the best of my knowlige and beleif.

"I want the Company to know I amy truly sorry for all the trouble I have caused them Maybe I can make it up in Some Way.

"I would like to in some way Repay the 1,5.60.00 one thousand five hundred and sixty. dollars.

"Witnessed by:

Fred Harrison

Steve Phillips 11/12/68

Lyman Munsell."

After the statement was signed Munsell was discharged from his employment. Following the termination Phillips kept one copy of the signed confession and sent a copy to Mr. Munsell's union. Harrison kept a copy which was later destroyed by him. It is undisputed that thereafter a meeting was had by the union in which Munsell sought to obtain his reinstatement on the job. Reinstatement was refused.

The appellant Ideal's version of the "interview" was that it came about because the company officials had been informed of possible wrongdoings and discrepancies on the part of plaintiff. Appellant contends that Mr. Munsell was advised of his rights and that a number of matters were discussed during the interview including the possible misappropriation of company property, padding of

time sheets, excessive drinking on the part of plaintiff, various insufficient checks written by plaintiff and dishonesty on the part of the plaintiff. Ideal contends that Munsell was advised not to admit to anything that he did not do and that there were no threats, promises or coercion of any kind involved. Ideal in substance contends that Munsell's freedom was never restrained in any way during the interview. There were two or three coffee breaks in which Munsell was allowed to leave the building and the statement of Munsell admitting to certain discrepancies and dishonesties was made voluntarily. The "confession" was made by his own desire and the facts stated therein were true according to Munsell. Ideal contends that its manager, Steve Phillips, and its interrogator, Harrison, were at all times acting in good faith, fairly in the usual way. Ideal takes the position that there is really nothing that Munsell has to complain about.

Munsell's version of the "interview" is vastly different. He contends that he was threatened and abused in the interrogation; that he was verbally hammered and hammered to get him to admit that he had stolen company equipment such as tires and jacks which he denied. At one point Munsell contends that he was warned that there was a warrant out for his arrest and unless he confessed he would be arrested and confined to jail. He denied that he had been advised as to his rights. He was compelled involuntarily to remain during the interrogation. His will was broken down and he was thereby compelled to sign the alleged "confession".

On March 7, 1969, Munsell filed this action to recover damages against Ideal Food Stores, Fred Harrison and Harrison's employer, National Business Security. In his petition the plaintiff set forth four separate causes of action which were in substance as follows:

In Count 1 plaintiff's theory of recovery was based upon false imprisonment. Under this count plaintiff alleges that he was cross-examined by Harrison for approximately 5½ hours with regard to alleged thefts by plaintiff from Ideal. He alleged that repeated demands were made upon him that he sign a confession of his stealing equipment and he was informed that if he did not, he would be placed in jail and prosecuted by the local authorities. He characterized the interview as a "Star Chamber" interrogation under wrongful arrest and continual threats of harassment by Steve Phillips. Munsell further alleged that at approximately 5:30 p. m. he signed a statement coerced and dictated by Harrison which was

untrue in many respects, and that he admitted falsifying his time record which was in fact untrue, believing the execution of such statement would terminate the inquisition and he wanted to keep his job. Under Count 1 Munsell also alleged that by reason of the wrongful and false imprisonment he was embarrassed, greatly humiliated and suffered mental and bodily distress and has been greatly injured in his character and reputation and has been unable to obtain employment. He further alleged that the defendant had acted maliciously without good faith and with intent, design and purpose to injure him, well knowing that the restraint was unlawful. Under Count 1 plaintiff sought to recover $15,000 actual damages and $10,000 punitive damages.

Count 2 of the petition set forth the theory of invasion of the right of privacy. Plaintiff alleged that the special interrogator, Harrison, maliciously invaded his right of privacy and that he was coerced and induced by fright and false imprisonment to give a written statement to facts that were untrue. Plaintiff alleges that his coerced statement was sent and maliciously displayed to other persons, particularly members of plaintiff's union and personnel within Ideal's organization, and subsequently disseminated throughout the trucking industry without the authority and consent of plaintiff. By way of damages plaintiff alleged that he had been refused further employment with Ideal and that he has been held up to public disgrace and ridicule in the community, that he had sustained and will continue to sustain mental suffering and distress and that he has been deprived of his high standing among his fellow workers and has been refused employment. For the violation of his right of privacy under Count 2 plaintiff sought to recover $15,000 actual and $10,000 punitive damages.

In Count 3 the plaintiff again alleged the allegations of Counts 1 and 2 and further stated that at the time of the commission of the grievances he was a person of good name and reputation; that on or about November 12, 1968, and prior thereto the defendant did maliciously publish false and untrue statements concerning plaintiff which were first distributed through Ideal's warehouse. He alleged that the coerced written statement was subsequently disseminated throughout the trucking industry in the area and that the material disseminated consisted of false, defamatory, libelous and slanderous words to the effect that plaintiff was a thief and falsified his time records which the defendant knew or should

have known were false and untrue. This count is obviously based on the theory of libel and slander and by way of damages plaintiff alleged that he has been greatly damaged in his good name, and has been deprived of public confidence, has been subjected to embarrassment, harassment, humiliation, anxiety and mental suffering and has been the subject of ridicule and scorn. Under Count 3 plaintiff sought to recover $15,000 actual and $10,000 punitive damages.

Count 4 set forth a cause of action based upon wrongful discharge from employment. After realleging the facts heretofore recited in Counts 1, 2, and 3, plaintiff alleged that he was employed by Ideal Food Stores as a truck driver pursuant to a labor management agreement between Ideal and plaintiff's union. The union contract was in effect and did not terminate until November 2, 1970. Plaintiff alleged that the employment contract was not complied with in that defendant Ideal failed to give plaintiff notice by registered mail of his discharge; that he was denied an investigation as to his discharge; and that he was wrongfully discharged and has been refused work and his wages without just cause. By way of damages plaintiff alleged that he had been denied work under his employment contract and had been refused wages which would amount to $25,800 from November 12, 1968, to November 3, 1970, and he prayed for $25,800 actual damages and $10,000 punitive damages as the result of the wrongful discharge from his employment.

To the petition of the plaintiff the defendant Ideal Food Stores filed its answer to Count 1 admitting that plaintiff was in Ideal's office on November 12, 1968, and that at that time he did sign a handwritten "statement". Defendant denied the other allegations in Count 1 of plaintiff's petition and specifically denied that plaintiff was ever threatened, arrested or imprisoned at the time alleged. As to Count 2 Ideal denied the allegations of plaintiff's petition and specifically denied that it invaded plaintiff's right of privacy, maliciously or otherwise. As to Count 3 Ideal denied that it libeled or slandered the plaintiff or that it had disseminated any false or untrue material whatsoever and further alleged that any communications whether written or oral between Ideal and the union relating to plaintiff's discharge from employment were unqualifiedly privileged and hence will not support a claim for libel or slander. As to Count 4 pertaining to wrongful discharge defendant admitted

the existence of the union contract under which plaintiff was employed and denied the other allegations of Count 4. By way of counterclaim defendant Ideal Food Stores sought to recover from the plaintiff Munsell the sum of $1560, the sum of money which plaintiff admitted in his "statement" he had received from defendant Ideal through false pretenses by padding his time reports. Plaintiff Munsell filed an answer to defendant Ideal's counterclaim denying any indebtedness and specifically alleged that the coerced acknowledgment of indebtedness (referring to the "confession") was void.

It should be noted that defendants Fred Harrison and National Business Security each filed an answer which denied the four counts of plaintiff's petition. Later on January 2, 1970, a journal entry of dismissal was filed dismissing the case as to both of those defendants since they had settled with Munsell.

With the pleadings in this rather complex posture the case was brought to trial before a jury on April 21, 22 and 23, 1970. The evidence presented at the trial was hotly disputed. Plaintiff Munsell called Steve Phillips to testify. Phillips was the Director of Operations for Ideal Food Stores. It was he who called upon Fred Harrison to come in and interview Munsell. Mr. Harrison or other interrogators had been called in for this purpose 25 or 30 times in the past six years. Phillips recalled a similar interrogation taking place of other employees who were accused of eating Ideal's fruit and the interrogator obtained and filed statements to that effect. He testified as to certain bad checks that had been written by Munsell in the past. Ideal had received several outstanding bad checks through the past 4 or 5 years. Phillips further testified that a letter was sent to Munsell dated September 17, 1967, in regard to insufficient fund checks. The witness testified as to the time slip and driver's report of Munsell dated October 25, 1968. He testified that Munsell had admitted padding this slip by adding a figure of two hours. Mr. Hawkins, an Ideal employee at Lubbock, Texas, had telephoned Phillips and requested him to check on that padded time slip since he had approved it for only three-fourths of an hour. In regard to the interrogation Phillips testified that it started between 1 and 1:30 in the afternoon on November 12, 1968, and was terminated the same day at approximately 5 or 5:30 p. m. This included the time for breaks which were taken. Mr. Munsell received a written notice that his employment was terminated but

it was not sent registered mail. He further testified that Fred Harrison had advised Munsell in preparing the written statement. Phillips indicated that he had discussed Munsell with the president of the union and had informed him that the interview was to take place. A copy of the confession was kept by Harrison and a copy sent to the union. A report was made to the office of unemployment compensation that Munsell had been discharged for falsifying company records and the results were also sent back to the company office in Detroit. Concerning the copy of the statement that went to the union, Phillips testified this was done as definite proof of "what we felt was dishonesty and proof of our legality of discharge of the employee." On cross-examination Phillips testified that National Business Security was hired by Ideal to check its employees insofar as honesty was concerned to try and weed out the dishonest ones. Phillips further testified that he discharged Munsell from his employment on November 12, 1968, the reason being for violation of company policy against dishonesty. He described his office where the interview took place as being 14' x 14' with a desk, 3 or 4 chairs and a file cabinet. The chairs were comfortable and there was carpet on the floor. The one door was closed but never locked during the interview. He testified that he never anytime told Munsell he was under arrest, that there were no threats of any kind made, or promises of leniency; that Munsell was paid for his time during the interview. He remembered one break being taken during the afternoon at which time Munsell went to the coffee room. Munsell was advised that he was entitled to counsel and that he could leave anytime he wanted to. Phillips testified that during the interview they discussed the time card, the hot checks, excessive alcoholism and dishonesty. He said plaintiff was advised not to admit to anything that was not true or correct. He said the interview was brought about by complaints of a fellow driver and the call from Lubbock, Texas, concerning the time slip inaccuracy. Two warning letters had previously been sent by Ideal to Munsell. One dated January 24, 1968, was in regard to his failure in getting up which caused a delay in the delivery of groceries. Another letter was sent Munsell regarding delays caused by his failure to arise at the proper time. This second letter was dated February 8, 1968, and was designated as a "final warning." In regard to Munsell's bad checks, as far as Phillips knew they had been paid by deducting the amount thereof from Munsell's expense vouchers. Ideal would then pay the checks.

The testimony of Lyman Munsell differed substantially from Phillips' version of the interview. He testified that he was 52 years of age with an eighth-grade education. He had been employed with Ideal since 1956 in the capacity of a truck driver. He testified that before November 12, 1968, he had never been arrested or had a drinking problem. He liked his job with Ideal and he thought he had a good truck driving record. As to the interview he testified that he was introduced to the special investigator who told him he was in trouble. As to the padding of the logbook Munsell testified that they discussed how much time he had padded and he finally said he had padded 15 minutes per day, which figured over the years to $1500. He indicated that he did not recall that he had ever been told he could have a lawyer present and he did not think he could have a union representative there. Harrison told him what to write in the confession except the part of being sorry which he put in himself. He testified in substance that he thought he was entitled to be paid during the two hours the trailer was being loaded at Lubbock and it was a reasonable statement. He testified about being embarrassed after being discharged and he felt he was unjustly terminated. He told about having difficulty in getting employment in the trucking industry. At one point Munsell testified that he was advised by Phillips or Harrison that he could go to jail on the insufficient fund checks and that they hammered and hammered on him about selling company equipment such as tires and jacks. They also accused him of selling merchandise off of the trailer. They asked him at one time to go to the coffee room and he was tickled to get out of there because their hammering and hammering "will about beat you to death." The door was closed but not locked. He was trying to protect his job and did not think he could leave. He thought if he left he would go to jail. At one point Harrison told Phillips to get the warrant because Munsell refused to admit selling merchandise off the trailer. Harrison told him what to write and he did not voluntarily and freely sign the statement. His reason for signing it was as follows:

"I figured if I didn't sign it, well I'd always got along good with the company and trusted them and thought they did me and this come up and was trying to protect my job and sure as the world didn't want to go to jail and that's the reason I signed it."

Munsell testified that he had been advised by another driver that he was going to get fired even before the day of the interrogation.

The substance of Munsell's testimony was that he was kept in the Ideal Company office involuntarily and against his will; that he was threatened with arrest and promised leniency if he would confess; there was coercion and duress involved in obtaining the statement; that he was not guilty of any dishonesty whatsoever and he should not have been fired. Plaintiff introduced into evidence, exhibit No. 9, which was a complaint about his treatment at the interview dated November 21, 1968, directed to his local union. The nature of his grievance was as follows:

"On Tuesday, November 12, 1968, I was called into Steve Phillip's office. Steve introduced a man called Fred _____. Fred stated he was a special investigator. He did not advise me of my rights when he started the following interrogatories or at any time for that matter. He showed me an insufficient fund check I had written and threatened to have me put in jail because of it. They stated that if I would admit to stealing and selling a tire or tires and jack and other merchandise off the trailer they would forget everything. When I would not admit this, because I had not done it, they asked me to step outside. They later called me in and started pressing the question of padding my time sheet. They accused me of padding my time sheet 15 minutes a day which amounts to one coffee break of which everyone is allowed two a day. They dictated a four page letter for me to write stating that I padded my time sheet 15 minutes a day and had me sign it. I did this because I didn't know what else to do because of the pressure they put on me. I feel I was unjustly accused of stealing and this has caused undue hurt. s/ Lyman Munsell."

Fred Harrison's version of the interview differed radically from Munsell's version. He testified that he advised Munsell as to who he was and that he was not a policeman and that Munsell did not have to sit there and talk to him and could get up and leave anytime. He asked Munsell about selling a tire, jack and property of Ideal Food Stores and Mr. Munsell denied this. He visited with Munsell about the time sheets and Munsell advised him he had been padding his driving sheets since about two years after his employment. Munsell's exact words were that it would amount to about 15 minutes per day. They then visited about the insufficient fund checks which Munsell readily admitted. Harrison admitted that he had been asked to assist in the wording of the statement by Mr. Munsell, which he did. The statement was dictated by Harrison and Munsell wrote it down. Everything in it was discussed prior to the writing of the statement. Harrison indicated there were two or three breaks during the afternoon at which time Munsell left the room and building. Munsell's freedom was

not restrained in any way and a warrant was never flashed in his face. Harrison never advised Munsell he was under arrest and Munsell never indicated he was under arrest nor did he act frightened in any way. No threats of any kind were made to Munsell. Although the door was closed it was never locked; no weapons were shown. Harrison advised Munsell he could seek the aid of an attorney at any time and Munsell stated he did not need one. Munsell was not forced to give a written statement. Munsell himself wrote the part in the statement that he was sorry he had caused trouble and also the part about wanting to repay the $1500. After the statement was made Harrison shook Munsell's hand. There were other witnesses called by both plaintiff and defendant whose testimony was also conflicting. It is clear that the signed statement was displayed and discussed by Munsell's fellow employees at a union meeting.

At the close of the evidence counsel for Ideal submitted a number of requested instructions to the court which were refused before the case was submitted to the jury. In instructing the jury the trial court combined all four of the claims of the plaintiff into a single claim by which plaintiff sought a recovery in the amount of $70,800 actual damages and $40,000 punitive damages. The court submitted a single verdict form covering plaintiff's claims and another verdict form covering the counterclaim of defendant Ideal. On April 23, 1970, the jury returned a verdict finding for the plaintiff Munsell against the defendant Ideal Food Stores in the amount of $30,012.45 actual damages and $0 punitive damages. The jury also returned a verdict on the counterclaim in favor of defendant Ideal Food Stores and against Lyman Munsell in the amount of $0. The trial court approved the verdict of the jury and entered judgment in favor of the plaintiff on the verdict. Defendant Ideal then filed a motion for a new trial and also a motion for a directed verdict which motions were overruled by the trial court. Ideal then filed a timely appeal to this court.

The appellant Ideal relies upon seven points and numerous subpoints upon each of which a claim of error is asserted. Most of the points are directed against the instructions which the court gave to the jury and the court's refusal to give certain instructions requested by appellant. Appellant also raises a number of questions of law and also other trial errors.

As its first point on this appeal appellant contends that the court erred in applying the law on libel and slander. It is first urged

that the court's instructions on libel and slander were incomplete, ambiguous and confusing. The appellant contends that the alleged defamatory publication complained of here is a written statement which the plaintiff himself prepared. Appellant relies upon a general rule of law to the effect that a publication of a libelous and slanderous nature is insufficient to support an action for defamation where it is invited and procured by the plaintiff, or a person acting for him in the matter. (50 Am. Jur. 2d, Libel and Slander, § 149, p. 655; *Richardson v. Gunby*, 88 Kan. 47, 127 Pac. 533.) The jury should have been instructed to the effect that if the plaintiff voluntarily prepared the statement with a reasonable belief that it would be disclosed to others, then plaintiff would not be entitled to recover from the defendant under Count 3. If however, the plaintiff prepared the statement as the result of coercion and against his will, then the fact he prepared it would not prevent plaintiff from recovering from the defendant. Obviously, what the rule mentioned contemplates is a situation where a plaintiff voluntarily participates in the publication of a defamatory statement. In that situation the defamation is deemed to be the result of his own voluntary act. We hold that the trial court should have instructed the jury on this point.

As its next ground for error Ideal contends that the delivery of the statement to the union by Ideal was a privileged publication or communication and that the trial court should have given an appropriate instruction in this regard. Privileged communications are often divided into two classes: Absolute privilege, and conditional or qualified privilege. It has been held that absolute privilege is recognized as applying to cases in which the public service or the administration of justice requires complete immunity as in legislative, executive or judicial proceedings, the occasion for the immunity being not so much for those so engaged as for the promotion of the public welfare. (*Stice v. Beacon Newspaper Corporation*, 185 Kan. 61, 340 P. 2d 396.) A qualified privileged publication is one made on an occasion which furnishes a prima facie legal excuse for making it unless some additional facts are shown which alter the character of the publication. It comprehends communications made in good faith, without actual malice and with reasonable or probable grounds for believing them to be true. Where a defamatory statement is made in a situation where there is a qualified privilege the injured party has the burden of proving not only that

the statements were false, but also that the statements were made with actual malice—with actual evil-mindedness or specific intent to injure. (*Stice v. Beacon Newspaper Corporation*, supra.) The question whether or not a publication is privileged is a question of law to be determined by the court. In the case at bar the appellant requested a specific instruction pertaining to qualified privilege. We hold that it was error for the trial court to fail to give an appropriate instruction on this subject. The trial court should have ruled as matter of law that the appellant Ideal in its position as an employer had an obligation under its contract with the labor union to make a report of the disciplinary action taken against an employee who was a member of the union. It is well recognized that a communication pertaining to the reasons for discharge of a former employee is qualifiedly privileged if made in good faith by a person having a duty in the premises to one who has a similar interest therein. This is true even though the communication contains a charge of crime. There is an extensive discussion on this subject in 50 Am. Jur. 2d, Libel and Slander, § 273, p. 791. For a case in Kansas involving a communication by an employer setting forth reasons for the discharge of a former employee we note the case of *High v. Hardware Co.*, 115 Kan. 400, 223 Pac. 264. There this court held that the communication was conditionally privileged and that the defamed former employee could not recover from his former employer in the absence of actual malice. We have no hesitancy in holding that in the instant case a delivery by Ideal to Mr. Munsell's union of a copy of the plaintiff's statement was qualifiedly or conditionally privileged. Hence the trial court was in error in failing to give an instruction on this subject.

Appellant next urges that the trial court erred in giving Instruction No. 3 which defined libel per se. In the case at bar the statement which was delivered by Ideal to the union as the basis for Munsell's discharge, clearly constituted an imputation of dishonesty since it charged falsification of driver's reports and padding of time sheets. It is well nigh universally accepted that imputations made by an employer of dishonesty or unethical practices on the part of his employee are libelous per se. (50 Am. Jur. 2d, Libel and Slander, § 74, p. 578; 6. A. L. R. 2d 1008.) In the case at bar the trial court should have instructed the jury that the charges made by Ideal against Munsell were defamatory as a matter of law rather than giving a general definition of libel per se.

Appellant next complains that the trial court's Instruction No. 4 did not adequately cover the subject of malice. The instruction given was as follows:

"Malice exists when an injurious act is done intentionally or with a reckless disregard for the rights of others with full knowledge of its nature, without just cause or excuse. It may exist in the absence of spite or ill will against any individual and will arise from a wanton disregard for the rights of others."

Appellant's requested Instruction No. 25 in substance requested the court to instruct the jury that since a qualified privilege existed in this case the jury should not find in favor of the plaintiff unless the words communicated were false and were communicated with express malice, that is, with the willful intention to do plaintiff an injury because of hatred or ill will. We agree with the appellant that the instruction given on malice did not adequately cover the subject of actual malice as it is defined under the law of libel and slander. In this regard the definition of express malice should be noted in *Stice v. Beacon Newspaper Corporation,* supra, at page 65, where malice is defined as "actual evil-mindedness or specific intent to injure".

As its second main point Ideal contends that the court below erred in its application of the law pertaining to invasion of the right of privacy. Ideal contends that the court erred in giving Instruction No. 7 because it did not properly instruct the jury as to the law on the right of privacy and because plaintiff offered no evidence as to the invasion of the right of privacy. Instruction No. 7 was the only instruction given to the jury on this subject and was as follows:

"Invasion of right of privacy is the wrongful intrusion of one's private activities in such a manner as to outrage or cause mental suffering, shame and humiliation to a person of ordinary sensibilities."

In Count 2 of his petition the basis of Munsell's claim of invasion of the right of privacy is that the statement was coerced and was maliciously sent and displayed to plaintiff's union and personnel within Ideal's organization and subsequently was disseminated throughout the trucking industry. There is no evidence in the record to show that with the exception of plaintiff's written statement any of the conversation which occurred during the interview was ever communicated by Ideal to anyone. Likewise, there was nothing in the evidence to show that the written statement itself was delivered by Ideal to anyone other than to Harrison and to the union. Does this constitute a violation to the right of privacy?

This court recognized the right of privacy as a distinct right in *Kunz v. Allen,* 102 Kan. 883, 172 Pac. 532, and in *Johnson v. Boeing Airplane Co.,* 175 Kan. 275, 262 P. 2d 808. In *Kunz* moving pictures were taken of plaintiff in a drygoods store without her knowledge. The films later were developed and exhibited at a local motion picture theater. A violation of the right of privacy was recognized. In *Johnson* an employee of Boeing Aircraft Company knowingly posed for a series of pictures with one of Boeing's B-47s. The pictures were published in the Boeing Company publication and were also published nationally as a part of an advertisement for the Boeing Company. Some time later plaintiff brought an action for damages for the invasion of his right of privacy. In *Johnson* the right of privacy was defined generally as "the right to be let alone". It was there suggested that the right of privacy is violated where there is an unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. The court found that plaintiff by his conduct had waived his right of privacy under all the facts and circumstances and denied recovery to plaintiff. It is clear from the decisions that only unwarranted invasions of the right of privacy are actionable. The corollary to this rule is that a "warranted" invasion of the right of privacy is not actionable. Appellant urges that we recognize and apply here the rule that the right of privacy does not prohibit the communication of any matter though of a private nature, when the publication is made under circumstances which would render it a privileged communication according to the law of libel and slander. This rule is recognized in 41 Am. Jur., Privacy, § 20, p. 940; *Brents v. Morgan,* 221 Ky. 765, 299 S. W. 967, 55 A. L. R. 964; and in the first comprehensive article on the subject of the "Right to Privacy" in 4 Harvard Law Review 193, at page 216 published by Samuel D. Warren and Louis D. Brandeis in 1890. We hold that the rule is sound and should be applied in the case at bar.

We are also faced here with the fact that in the instant case plaintiff asserts a claim for an invasion of right of privacy and also asserts a claim of libel and slander both arising from the same alleged wrongful act on the part of Ideal. The difference between the torts of defamation and invasion of privacy is that a defamation

action is primarily concerned with compensating the injured party for damage to reputation, while an invasion of privacy action is primarily concerned with compensation for injured feelings or mental suffering. (*Themo v. New England Newspaper Pub. Co.*, 306 Mass. 54, 27 N. E. 2d 753; *Brink v. Griffith*, 65 Wash. 2d 253, 396 P. 2d 793.) In the instant case under Count 2 claiming invasion of the right of privacy the plaintiff sought damages by way of loss of employment, public disgrace in the community, and shame and mental suffering. Under Count 3 involving libel and slander plaintiff sought to recover as damages, injury to his good name and fame, loss of public confidence, embarrassment, harassment, humiliation, anxiety and mental suffering and being held in contempt, ridicule and scorn. We hold that under the circumstances of this case the plaintiff is seeking in Counts 2 and 3 to recover from the defendant the same damages for the same wrongful act.

We hold that it was error for the trial court to submit the claim for invasion of the right of privacy under Count 2 to the jury for two reasons: First, under the circumstances the inquiry by Ideal and the communication was qualifiedly privileged and therefore was not an unwarranted invasion of the right of privacy; second, the claims under Counts 2 and 3 are in effect but one cause of action seeking to recover the same elements of damages for the same alleged wrongful act.

As its third point on this appeal appellant Ideal contends that the court erred in its application of the law on false imprisonment. The thrust of appellant's argument is that the evidence presented at the trial did not establish a claim on the theory of false imprisonment for the reason that no actual restraint or detention of Munsell's person was established. We can not agree with this contention. There was sufficient evidence in the record to make out a submissible case supporting Munsell's theory that he remained at the interview under fear of coercion and because of threats. The nature of the action of false imprisonment is succinctly stated in *Comer v. Knowles*, 17 Kan. 436, by Justice Valentine as follows:

"False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone, or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison, or within walls; or that he be assaulted, or even touched. It is not necessary that there should be any injury done to the individual's person, or to his character, or reputation. Nor is it necessary that the

wrongful act be committed with malice, or ill-will, or even with the slightest wrongful intention. Nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is, that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard." (p. 440.)

*Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 468 P. 2d 269 cites *Comer* with approval. Counsel for the appellee cites cases from other jurisdictions involving the "interrogation" of employees by special detectives under circumstances similar to those present in the case at bar. These cases hold that physical restraint is not essential to false imprisonment if words and conduct induce reasonable apprehension that resistance or attempted flight would be futile. (*Halliburton-Abbott Co. v. Hodge,* 172 Okla. 175, 44 P. 2d 122; *Dillon v. Sears-Roebuck Co.,* 126 Neb. 357, 253 N. W. 331; *W. T. Grant Co. v. Owens,* 149 Va. 906, 141 S. E. 860.) These decisions emphasize that there is a clear distinction between a lawful and orderly interrogation of or interview with an employee, to investigate that employee's suspected irregularity, and a browbeating, third-degree inquisition. It is not for an employer or any private detective hired by it to take over the administration of our criminal laws and the functions of the county attorney. The record discloses clear-cut issues of fact on the claim of false imprisonment which were properly left for the consideration of the jury.

Ideal also complains of the court's giving Instruction No. 8 which is identical with PIK 14.20. This instruction has been approved in *Thompson v. General Finance Co., Inc.,* supra, at page 89. Appellant's requested Instructions No. 7 and 9 were sufficiently covered by the court's Instruction No. 8 and we find no error in the failure to give them. There was no instruction given on the measure of damages in an action for false imprisonment. If this case is retried, we suggest that the trial court consider PIK 14.22, which adequately and concisely covers that subject.

The appellant contends in its fourth point that the trial court erred in its application of the law of wrongful discharge from employment. It is first urged that the trial court should have ruled as a matter of law that the labor management agreement between Ideal and the union was not a contract of employment between Munsell and Ideal and therefore plaintiff had no right of action for damages by a breach thereof. We do not agree. Article I, Section 1 (b), of the contract which was admitted into evidence provided that the terms of the agreement had been made for all

the employees in the bargaining unit whether they are members of the union or not. The law is clear that where a labor management contract contains provisions for the benefit and protection of the individual members of the union, an individual member of the union has the right to sue thereon for its breach. This modern rule is based on the theory that the individual employee is a third-party beneficiary and the union is agent of the individual employee; hence he has the right to sue for a breach of the contract affecting his rights. (*Ryan v. Ryan,* 156 Kan. 348, 133 P. 2d 119; *Crisler v. C. K. Packing Co.,* 181 Kan. 118, 309 P. 2d 703; *May v. Santa Fe Trail Transportation Co.,* 189 Kan. 419, 370 P. 2d 390.)

Appellant argues that the contract of employment was terminable at will, and therefore Munsell had no cause of action because of his discharge. We find this argument without merit because the contract itself provided for a fixed term of employment with specific provisions contained in the contract pertaining to discharge of an employee. Appellant further contends that the trial court erred in not giving any instruction at all in regard to the relative rights and liabilities under the contract as to the discharge of an employee. We agree with appellant that this was error. The only instruction having to do with the subject of wrongful discharge was Instruction No. 9 where all of the elements of damages as to all four claims were lumped together. The court should have instructed the jury in regard to those sections of the contract pertaining to discharge of an employee. We note in particular Article 1, Section 6, of the contract which gives to management the right to discharge an employee for proper cause and also Article VIII, Section 1, which provides that the employer shall not suspend or discharge any employee without just cause. The latter provision also provides for giving notice, the right of an employee to have an investigation as to his discharge, and a right of appeal. If this case is retried, the court should give instructions covering the law pertaining to wrongful discharge under the employment contract in this case. We direct the parties' attention to PIK (1968 Supp.) 18.52 for a pattern instruction governing the subject of wrongful discharge. There should also be an instruction setting forth the elements of damages recoverable by a plaintiff for a breach of this kind of contract. Under the evidence presented to the court there is a disputed issue of fact whether or not Ideal had legal cause to discharge Munsell from his employment.

Appellant also argues that Munsell failed to comply with the provisions of the contract, Article VIII, Section 1, which required a discharged employee to appeal within 10 days from the time of his discharge. In this case the discharge took place immediately after the interrogation on November 12, 1968. We note that nine days later on November 21, 1968, Munsell filed a complaint with the union complaining that he had been unjustly accused of stealing and setting forth his objections to his wrongful discharge. In this written complaint he authorized the union to settle his complaint as it deemed proper and he agreed to accept and be bound by a settlement agreed to by the Union, or decided by any Grievance Committee authorized by contract to adjudicate disputes or grievances with his employer. This document delivered to his union office clearly constituted a request for an investigation of Munsell's discharge. No formal investigation was ever provided Munsell and no grievance hearing was ever held. Under these circumstances it could hardly be contended that Munsell failed to take steps necessary to protect his rights under the contract after he was discharged by Ideal.

Points five and six raised by appellant on this appeal involve basically the same claims of error. Appellant Ideal contends that the complete set of instructions given by the court were incomplete, ambiguous and confusing and that in stating the nature of the case to the jury the court erred in failing to separate the various counts and causes of action. It is further urged that the court erred in submitting only one verdict to the jury thus allowing it to return one verdict determining damages in a lump sum under all four counts. We agree with appellant Ideal that the method used by the court in submitting the case to the jury was confusing and constituted reversible error. We find that the trial court was in error in combining all counts into a single cause of action. The court should have given appropriate instructions on each claim stating the nature thereof, the contentions of the plaintiff, the defenses asserted and further instructed as to the elements of damage recoverable under each claim. As indicated heretofore a motion for judgment on Count 2 pertaining to invasion of the right of privacy should have been sustained and that count should have been withdrawn from the jury. In this case requested instructions were submitted and a timely objection was made to the use of the single verdict by appellant prior to the submission of

the case to the jury. We find no waiver of the claims of error asserted by Ideal on this appeal.

We also suggest that on retrial consideration should be given to an instruction pointing out the similarity of the elements of damages under the various causes of action and instructing the jury that double recovery for these items should not be allowed in the event they should find in favor of the plaintiff Munsell.

Under appellant's seventh point it is contended that the trial court erred in refusing to let appellant cross-examine plaintiff about his criminal convictions subsequent to November 12, 1968. The trial court permitted cross-examination of plaintiff as to his convictions prior to November 12, 1968, the date of the interview but the court refused to permit questions as to convictions subsequent to that date. We find that this was error. Plaintiff's character was put in issue by the very nature of the claims asserted and the damages sought. Plaintiff introduced a great deal of evidence in which he attempted to establish his good character. Appellant's counsel in his cross-examination should not have been limited to criminal convictions which existed prior to the date of the interrogation November 12, 1968. It should be further stated that evidence of convictions of crimes involving dishonesty or false statement after November 12, 1968, were admissible to impair the credibility of the plaintiff under the provisions of K. S. A. 60-420 and K. S.A. 60-421.

So far as the record before us shows, no pretrial conference was held in this case pursuant to K. S. A. 60-216. We can conceive of no case where such a conference could have been used to better advantage. Properly conducted under the auspices of a judge, the issues could have been simplified, amendments to pleadings considered and made, admissions of fact and of documents obtained, and other agreements reached or orders made to aid in the orderly and expeditious disposition of the case. Non-use of the pretrial procedure, especially in complicated litigation, is neglect of an effective tool both for the trial of a particular case and for efficient judicial administration.

For the reasons set forth above the judgment of the trial court is reversed and the case is remanded to the district court for a new trial in a manner not inconsistent with this opinion.

It is so ordered.